CRESSON & CLEARFIELD COAL & COKE CO. v. STAUFFER.

(Circuit Court of Appeals, Third Circuit.  November 21, 1906.)

No. 9.

BANKRUPTCY — CORPORATION — EFFECT OF INSOLVENCY PROCEEDINGS UNDER
STATE LAW.

Proceedings under Pa. Act, April 7, 1870 (P. L. 58), by which the franchise and property of an insolvent corporation are sold, under a special writ of fieri facias for distribution among its creditors, do not work a dissolution of the corporation so as to defeat the jurisdiction of a court of bankruptcy to adjudge it a bankrupt, or disenable its directors to admit its insolvency and willingness to be adjudged a bankrupt which constitutes an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (5). 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 23.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Boyd Lee Spahr, for appellant.
Henry N. Wessel, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge.  This is an appeal from the decree of the district court for the eastern district of Pennsylvania, sitting as a court of bankruptcy, in the matter of The International Coal Mining Company, adjudicating the said corporation a bankrupt.

The opinion of the district judge (143 Fed. 665), in making this adjudication, is as follows:

"Holland, District Judge.  On July 14, 1905, a writ of fieri facias, on a judgment obtained by the Cresson & Clearfield Coal & Coke Company, was issued against the alleged bankrupt, which was returned unsatisfied.  Whereupon the judgment creditor filed a petition under the Pennsylvania Act of April 7, 1870 (P. L. 58), and the common pleas court of Philadelphia directed the issuance of a special writ of fieri facias authorized by this act, under which the Sheriff seized upon the bankrupt's property and duly advertised for sale the 'franchise right to be a corporation, together with all property, real, personal and mixed, and all book accounts, claims, choses in action, causes in action arising out of contracts, torts or penalties, and assets of every description belonging to or in any way appertaining to the International Coal Mining Company, excepting only lands held in fee,' and on the twenty-ninth day of September, 1905, sold the same to P. H. Walls for the sum of forty dollars ($40).  The costs of the said proceedings were twenty-five and ninety-two hundredth dollars ($25.92), which are retained by the sheriff, and the balance, fourteen and eight-hundredth dollars ($14.08), is distributable pro rata among all the creditors of the International Coal Mining Company under the seventy-fourth section of the Pennsylvania act of June 16, 1836 (P. L. 775).  It does not appear, however, that this distribution has been made.

"On December 5, 1905, an involuntary petition in bankruptcy was filed against the alleged bankrupt, setting forth as one of the acts of bankruptcy the execution and sale of the alleged bankrupt's property above mentioned, and its failure to vacate or discharge this alleged preference.  It is also alleged in the petition that on the twenty-fifth day of November, 1905, the International

Coal Mining Company admitted in writing its inability to pay its debts and its willingness to be adjudged a bankrupt on that ground.

"The Cresson & Clearfield Coal & Coke Company in due season, objected to the International Coal Mining Company being adjudged a bankrupt, for the reason that the sale under the special fieri facias authorized by the Pennsylvania act of 1870, supra, worked, under the laws of Pennsylvania, a dissolution of the corporation, and at the time of filing the petition in bankruptcy it had no legal existence, and, further, that the equal distribution required under the seventy-fourth section of the act of June 16, 1836, in effect prevented the preference, which is prohibited by the Bankrupt Act, § 3, subd. 3, Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], and there was consequently no commission of this act of bankruptcy. It is further contended that on November 25, 1905, when the alleged bankrupt corporation, through its board of directors, admitted in writing its inability to pay its debts and its willingness to be adjudged a bankrupt, that it had no legal existence, and this act of the board of directors is a nullity.

"Prior to the passage of the act of April 7, 1870, supra, a return of 'unsatisfied in part or in whole' to an execution against certain corporations entitled the plaintiff in the judgment, upon petition, to have a sequestrator appointed, whose duty it was to distribute the net proceeds of the property among all the creditors of such corporation according to the rules established in the case of insolvency of individuals, and such sequestrator was accorded all the powers and was subject to all the duties of trustees appointed under the law relating to insolvent debtors. The fieri facias, which this act of 1870 authorizes, after the insolvency of the corporation is established by a return of nulla bona, is in lieu of the provisions or proceedings by sequestration under the seventy-fourth section of the act of 1836, P. L. 775 (Philadelphia & Baltimore Central Railroad Co. v. McCullough, 70 Pa. 355), and the duties of the sequestrator are performed by the sheriff who is still required to make equal distribution of the proceeds of sale to all the creditors of the insolvent corporation. Bayard's Appeal, 72 Pa. 453.

"The proceedings in effect, beginning with an execution, a return thereto, establishing the insolvency, followed by a sale of all the property of the insolvent corporation on the special fieri facias under the act of April 7, 1870, and an equal distribution among creditors of the corporation, is nothing more or less than a state insolvent law for the purpose of administering the property of insolvent corporations. It is made an act of bankruptcy to put a receiver or trustee in charge of the property of a corporation under state laws by section 3, subd. 4, and the substitution of the sheriff to effect the same result will not defeat the provisions of the act.

"In these proceedings the property of the insolvent corporation is not placed in the hands of a receiver or trustee by that name, but it is so in effect, because the sheriff, after a sale of the property on execution, is required to distribute the net proceeds among the creditors of the corporation according to the rules established in cases of insolvency of individuals and the same as a receiver or trustee would have been required to do under the law relating to insolvent debtors in the state.

"The placing of the insolvent corporation's property in the hands of a receiver or trustee under the state laws is not charged as one of the acts of bankruptcy in the creditor's petition, and an adjudication cannot be entered for that reason as the record now stands, and we do not think that the execution and sale of the property and the distribution of the proceeds in this proceeding is an act of bankruptcy set forth in section 3, subd. 3, of the bankrupt act because there is no lien created by the levy (Bayard's Appeal, supra), and no creditors will obtain a preference, but the admission in writing by the board of directors of the inability of the corporation to pay its debts and its willingness to be adjudged a bankrupt is set forth as an act of bankruptcy which will entitle the creditors to an adjudication, if, for the purposes of the bankrupt law, they had authority to pass upon this question. We think they had.

"The bankrupt law is paramount to all the state insolvent laws, and where the effect of enforcing the state law is to defeat the object of the provisions of

the bankrupt act, that part of the state law must yield to the provisions of the latter.

"To concede the contention of the respondent here, that the sale of the property of the alleged bankrupt by the sheriff of Philadelphia county on this peculiar writ worked a dissolution of the corporation so that proceedings in bankruptcy could not be instituted against it, would 'result in the anomalous situation that the commission of an act of bankruptcy would prevent the bankrupt act from taking effect.' But even under the act of 1870 the corporate existence does not entirely disappear upon the sale of the property and franchises upon an execution under that act, because the act 'excepts lands held in fee' from sale on the special fieri facias, which must 'be proceeded against and sold in the manner provided for in cases for the sale of real estate.' The title to this excepted real estate must remain in the corporation until sold, and a dissolution cannot take place so long as this asset exists, even under that act. But even if this were not so, the bankrupt act would so far control the matter of dissolution of the insolvent corporation as to prevent its legal extinction by superseding all state laws in conflict with its provisions to an extent necessary to enable creditors of insolvent corporations to have the assets of their insolvent debtor administered in accordance with its terms. Scheuer v. Book Co., 7 Am. Bankr. Rep. 384, 112 Fed. 407; Storck Lumber Co. of Baltimore, 8 Am. Bankr. Rep. 86, 114 Fed. 360; Hercules Adkin Co., Ltd., 13 Am. Bankr. Rep. 369, 133 Fed. 813."

On the day of the adjudication, to wit, February 21st, 1906, the petitioning creditor obtained leave to file, and duly filed in pursuance thereof, an amendment to his petition, nunc pro tunc as of the 5th day of December, 1905, the date of the filing of the original petition. By this amendment, the placing under the laws of the state of Pennsylvania of the insolvent corporation's property in the hands of the sheriff is alleged, as set out in the petition and answer thereto, as an act of bankruptcy, in that thereby, because of insolvency, a receiver or trustee had been put in charge of the bankrupt's property under the laws of a state.

No objection on the part of the appellant, or of any other party in interest, to the filing of this amendment, nunc pro tunc, appears in the record. No denial is made in the answer of the appellant, of the allegations of the petitioning creditor, as to the insolvency of the bankrupt. All the material facts as set out in the petition and by the learned judge in his opinion, are admitted in the said answer, which is, in effect, a demurrer to the petition, and the questions rising thereon were decided as questions of law by the court. The opinion and conclusion of the court in regard to the proceedings under the special fi. fa. issued by the state court, as being in effect the placing under the state law of a receiver or trustee in charge of the bankrupt's property, now sustain the allegation of the amendment, nunc pro tunc, that these proceedings were of themselves an act of bankruptcy. The sheriff has taken the place of the sequestrator, and is still required to make equal distribution of the proceeds of sale to all the creditors of the insolvent corporation, in accordance with the requirements of the insolvent law of the state of Pennsylvania.

However this may be, the ground upon which the adjudication was actually made, was a sound one. The admission in writing by a person (which designation applies to a corporation), of his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground, is one of the acts of bankruptcy expressly declared in the third section

of the act. The admission in this case was made in writing by the secretary of the corporation, specially authorized by a vote of the board of directors, as set out in the petition and record. This admission is, in the terms of the act, and is dated on the 25th day of November, 1905, nearly two months before the filing of the creditor's petition. Though there is a general denial that this written admission of insolvency was authorized by a board of directors having general authority under the charter of the corporation, to make such an admission, no serious contention was made in that regard. It is, however, strenuously insisted that this act of the board of directors was a nullity, for the reason alleged, that, at the time it was made the corporation had ceased to exist, and that therefore, the directors and all other officers were functi officiis. It is true, that the law already referred to provides that the property and franchises of the corporation, sold under this special fi. fa., shall pass to the purchaser, thus, in effect, terminating the existence of the old corporation. If, however, the proceeding by which this property and franchises were sold, was an act of bankruptcy, it was void and of no effect. If it were not, still the existence of the corporation is not terminated in every respect by this requirement of the state law. It has often been held that, even where a charter expires by time, its existence will be considered as being extended for the purpose of winding up its affairs, securing creditors and satisfying the ends of justice, even without special statutory authority for that purpose, and we think that the paramount authority of the federal bankrupt law is sufficient to keep alive the corporation in this case for the purposes of the bankrupt jurisdiction created by the said act, and to give efficacy to the admission made by the directors of the insolvent corporation as an act of bankruptcy. But even the Pennsylvania law, both in regard to sequestration under the act of 1836 and the special fi. fa. under the act of 1870, while providing for the sale of the franchise, specially excepts lands held in fee, thereby making it necessary that the corporation should still have existence in respect to such ownership. We think, therefore, that in this case the act of the directors, in admitting insolvency and expressing willingness that the corporation should be declared a bankrupt, was predicated on a sufficient corporate existence to make the same an act of bankruptcy under the bankrupt law. The Ice Co., 214 Pa. 640, 64 Atl. 398.

The adjudication of the court below is therefore affirmed, for the reasons stated by the learned judge of that court.