## STELLWAGEN, TRUSTEE FOR ZENGERLE, v. CLUM, TRUSTEE IN BANKRUPTCY OF GEORGIAN BAY COMPANY.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 89. Argued December 14, 1917.—Decided February 4, 1918.

The Bankruptcy Act as it was on the dates herein mentioned (February 2, 1910, November 9, 1910) did not operate to suspend § 6343 of the Revised Statutes of Ohio as it stood February 2, 1910, or the sections into which that section was divided and numbered by the General Code of Ohio, approved February 15, 1910, viz: §§ 11102-11105, as such sections existed May 5, 1910.

The Ohio law, *supra*, (part of a chapter concerning insolvent debtors), provides, among other things, that any transfer made by a debtor to prefer creditors, or with intent to hinder, delay or defraud them, shall, if the transferee knew of such fraudulent intent, be declared void at the suit of any creditor or creditors, and that a receiver may thereupon be appointed to take charge of all the debtor's assets, including the property so transferred, and administer them for the equal benefit of all creditors in proportion to their respective demands. *Held*, that such provisions are consistent with the Bankruptcy Law, and that, availing of them pursuant to § 70e of the latter, a trustee in bankruptcy proceedings, which followed within a few days of the debtor's general assignment, could administer for the creditors generally property which had been transferred by the debtor in trust for particular creditors more than four months previously.

Bankruptcy laws enacted by Congress pursuant to Article I, § 8, of the Constitution, operate to suspend the laws of States only in so far as the latter laws are in conflict with the system established by the former.

In determining whether a state law is in conflict with the Bankruptcy Act, much weight is to be given the consideration that a main purpose of the act, and a prime requisite of every true bankruptcy law, is to benefit the debtor by relieving his future acquired property from the obligations of existing debts.

Although different results may ensue therefrom in different States, it is not inconsistent with the requirement of uniformity for the federal bankruptcy law to permit trustees in bankruptcy to avail themselves of state statutes intended to avoid fraudulent conveyances and thus promote the equal distribution of insolvent estates.

Section 70-e of the Bankruptcy Act gives the trustee in bankruptcy a right to recover property transferred in violation of state law, without reference to the four months' limitation; if a creditor could have avoided the transfer under the state law, the trustee may do the same.

For opinion of the Circuit Court of Appeals *in re* the certification, see 218 Fed. Rep. 730.

THE case is stated in the opinion.

*Mr. Bernard B. Selling, Mr. George E. Brand* and *Mr. J. Shurley Kennary* for Stellwagen, Trustee, submitted.

*Mr. Alfred Clum,* with whom *Mr. Geo. B: Marty* was on the brief, for Clum, Trustee.

MR. JUSTICE DAY delivered the opinion of the court.

This case is here upon certificate from the United States Circuit Court of Appeals for the Sixth Circuit. From the statement accompanying the certificate it appears that Stellwagen, Trustee for Margaret Zengerle, filed a petition in the United States District Court to require the surrender and transfer to him of a quantity of white pine lumber and balance due upon a certain open account then in possession of Clum as trustee in bankruptcy of the Georgian Bay Company. The order was denied, the petition dismissed, and appeal taken to the Circuit Court of Appeals.

The questions are whether certain provisions of the statutes of Ohio are suspended by virtue of the Bankruptcy Act of 1898. The facts upon which the questions arise, and in view of which they are to be answered, are thus stated:

"The Georgian Bay Company, an Ohio corporation, was at the time of the transactions in dispute engaged in the wholesale and retail lumber business at Cleveland. Ohio. February 2, 1910, the company delivered to appellant's predecessor (A. L. McBean), as trustee for Margaret Zengerle and the Dime Savings Bank of Detroit, its bill of sale, describing 433,500 feet of white pine lumber then in the company's yards, and stating a total price of $14,013; crediting the trustee with certain promissory notes of the company for a like sum and payable in different amounts, to the order of Margaret Zengerle, C. M. Zengerle, agent, and the Dime Savings Bank, respectively. Neither the bill of sale nor a copy was filed with the recorder of Cuyahoga County, Ohio; but the lumber so in terms sold consisted of piles (stacked in the ordinary way) which were to be and at the time in fact were each dis-

tinctly marked: 'Sold to A. L. McB., Agt.' May 3, 1910, the company with consent of McBean sold this lumber and certain of its own lumber then in the yards, to Schuette & Co. of Pittsburgh. Payment was to be made by Schuette & Co., part in cash, part in notes maturing at fixed times between date of sale and the following September 10th, and the balance in cash on or before October 1st. Two days later, May 5th, the Georgian Bay Company transferred to appellant 'the balance, twenty-five per cent. of invoice value or what may show due on the first of October, A. D. 1910, of the purchase price of the lumber' (so sold to Schuette & Co.), to secure payment in full of all moneys that should be advanced by, and 'payment *pro rata* of all moneys' then owing to, the Dime Savings Bank, Mrs. Zengerle and C. M. Zengerle, agent; and any surplus remaining was to be returned to the company. Schuette & Co., while owing a balance of $7,500 on portions of the lumber it had received, rejected the rest; this can be identified and is worth about $4,000. It was the transfer of this balance and the surrender of this rejected lumber that appellant sought in the court below.

"October 31, 1910, the Georgian Bay Company made a general assignment for the benefit of its creditors, which was properly filed the following November 7th; and on the 9th of that month the company was adjudicated a bankrupt. At the time there remained due from the bankrupt to Mrs. Zengerle $7,100. C. M. Zengerle is the husband of Margaret Zengerle, and was the president of the Georgian Bay Company; the notes payable to his wife represented loans of money belonging to her; and in negotiating those loans and in the transaction had under the bill of sale, he acted as her agent and as president of the company. The theory of the court below was that the bill of sale (February 2, 1910) was intended merely as security and, not having been deposited in accordance with Sec. 4150 (2 Bates' Ann. Ohio Stat., p. 2302) concerning

chattel mortgages, was null and void; that the transfer (May 5th) of balance accruing October 1st from Schuette & Co. was made with intent to hinder and delay creditors, when, according to the laws and the rule of judicial decision of the State of Ohio, the Georgian Bay Company was insolvent, though not according to the Bankruptcy Act; that Margaret Zengerle was, through her agent, C. M. Zengerle, chargeable with knowledge of such intent and insolvency, and the Savings Bank was not; that as to Margaret Zengerle the transfer was null and void and so was set aside, but that the Savings Bank was entitled to be paid out of the balance of the Schuette account. No appeal was taken from the portion of the decree which allowed recovery by the Savings Bank."

The statutes of the State of Ohio in question are §§ 6343 and 6344 of the Revised Statutes of Ohio as amended April 30, 1908, 99 Ohio Laws, 241, 242. These sections were rearranged under the General Code of Ohio approved February 15, 1910, wherein they appear as §§ 11102 to 11107, inclusive. (These sections are given in the certificate, as they stood February 2, 1910, and are found in the margin.[1])

---

[1] Sec. 6343. Every sale, conveyance, transfer, mortgage or assignment, made in trust or otherwise by a debtor or debtors, and every judgment suffered by him or them against himself or themselves in contemplation of insolvency, and with a design to prefer one or more creditors to the exclusion in whole or in part of others, and every sale, conveyance, transfer, mortgage or assignment made, or judgment procured by him or them to be rendered, in any manner, with intent to hinder, delay or defraud creditors, shall be declared void as to creditors of such debtor or debtors at the suit of any creditor or creditors, and in any suit brought by any creditor or creditors of such debtor or debtors for the purpose of declaring such sale void, a receiver may be appointed who shall take charge of all the assets of such debtor or debtors, including the property so sold, conveyed, transferred, mortgaged, or assigned, which receiver shall adminster all the assets of the debtor or debtors for the equal benefit of the creditors of the debtor or debt-

The claim is stated to be that § 6343 when considered in connection with the chapter concerning insolvent debtors is suspended by the Bankruptcy Act. Reliance is had for this contention upon the following portion of § 6343 which provides: "a receiver may be appointed who shall take charge of all the assets of such debtor or debtors, including the property so sold, conveyed, transferred, mortgaged, or assigned, which receiver shall administer all the

ors in proportion to the amount of their respective demands, including those which are unmatured.

Provided, however, that the provisions of this section shall not apply unless the person, or persons to whom such sale, conveyance, transfer, mortgage or assignment be made, knew of such fraudulent intent on the part of such debtor or debtors, and provided, further, that nothing in this section contained shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if such mortgage be filed for record in the county wherein the property is situated, or as otherwise provided by law, within three (3) days after its execution, and where, upon foreclosure or taking possession of such property, the mortgagee fully accounts for the proceeds of such property.

Every sale or transfer of any portion of a stock of goods, wares or merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's or transferrer's business, or the sale or transfer of an entire stock in bulk shall be presumed to be made with the intent to hinder, delay or defraud creditors within the meaning of this section, unless the seller or transferrer shall, not less than seven (7) days previous to the transfer of the stock of goods sold or intended to be sold, and the payment of the money thereof, cause to be recorded in the office of the county recorder of the county in which such seller or transferrer conducts his business, and in the office of the county recorder of the county or counties in which such goods are located, a notice of his intention to make such sale or transfer, which notice shall be in writing describing in general terms the property to be sold and all conditions of such sale and the parties thereto; excepting, however, that no such presumption shall arise because of the failure to record notice as above provided in the case of any sale or transfer made under the direction or order of a court of competent jurisdiction, or by an executor, administrator, guardian, receiver, assignee for the benefit of creditors or other officer or person acting in the regular and

assets of the debtor or debtors for the equal benefit of the creditors of the debtor or debtors in proportion to the amount of their respective demands, including those which are unmatured."

The questions propounded are:

"(a) Whether the Bankruptcy Act of the United States, in force on the dates herein mentioned, operated to suspend section 6343 of the Revised Statutes of Ohio, as such section stood February 2, 1910.

"(b) Whether the Bankruptcy Act operated to suspend the sections into which section 6343 was divided and numbered, February 15, 1910, by the General Code of Ohio, to-wit, sections 11102, 11103, 11104 and 11105, as such sections existed May 5, 1910.

"(c) If the Bankruptcy Act did not operate to suspend in their entirety the several sections of the Ohio statutes mentioned in the preceding questions, whether such suspension extended only to the portions thereof which in

---

proper discharge of official duty or in the discharge of any trust imposed upon him by law, nor in the case of any sale or transfer of any property exempt from execution.

Sec. 6344. Any creditor or creditors, as to whom any of the acts or things prohibited in the preceding section are void, whether the claim of such creditor or creditors has matured or will thereafter mature, may commence an action in a court of competent jurisdiction to have such acts or things declared void. And such court shall appoint a trustee or receiver according to the provisions of this chapter, who upon being duly qualified shall proceed by due course of law to recover possession of all property so sold, conveyed, transferred, mortgaged or assigned, and to administer the same for the equal benefit of all creditors, as in other cases of assignments to trustees for the benefit of creditors. And any assignee as to whom any thing or act mentioned in the preceding section shall be void, shall likewise commence a suit in a court of competent jurisdiction to recover possession of all property so sold, conveyed, transferred, mortgaged or assigned, and shall administer the same for the equal benefit of all creditors as in other cases of assignments to trustees for the benefit of creditors. (99 Ohio Laws, 241, 242.)

terms appropriated, for the benefit of all the creditors, the property of the debtor not specifically described in the bill of sale and transfer of account in dispute."

The Circuit Court of Appeals also sends an opinion *in re* the certification aforesaid, in which the court says that it is disposed to hold that if the provisions of the Ohio statutes were suspended, the appellant is entitled in behalf of Margaret Zengerle to recover, otherwise the trustee in bankruptcy is entitled to hold the balance due from Schuette & Company and the lumber rejected by them, and administer the same as part of the estate of the bankrupt for the benefit of its general creditors. The court states that as between Mrs. Zengerle and the general creditors of the Georgian Bay Company, there was sufficient delivery of possession of lumber covered by the bill of sale to dispense with the necessity of depositing the instrument with the county recorder. The sale subsequently made to Schuette & Company, upon the consent of Mrs. Zengerle's trustee, was a distinct recognition of the intent and effect of the bill of sale, and the marking of the piles of lumber, and the transfer of account made two days later was manifestly designed at once to execute the transaction involved under the bill, and transfer the rights thereunder of Mrs. Zengerle, as well as of the Savings Bank, to the sales' proceeds. The court further says, upon the hypothesis that the state statutes are suspended, that because more than four months elapsed between the delivery of the bill of sale, as also of the transfer of account, and the bankruptcy, the trustee cannot by virtue of the Bankruptcy Act alone question the validity of either of those instruments. The court adds that if the state statutes were not suspended, the general creditors acquired rights to have the instruments in dispute set aside because, under the facts shown, the company was not able to meet its debts as they fell due, and so, was insolvent; and, further, the instruments in terms were

made to a trustee. The rights so vested in the creditors being enforcible at any time within four years under the Ohio law.

The Federal Constitution, Article I, § 8, gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. In view of this grant of authority to the Congress it has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended. While this is true, state laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress. *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Ogden* v. *Saunders,* 12 Wheat. 213.

Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the State in certain particulars, although such recognition may lead to different results in different States. For example, the Bankruptcy Act recognizes and enforces the laws of the States affecting dower, exemptions, the validity of mortgages, priorities of payment and the like. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the act is not alike in all the States. *Hanover National Bank* v. *Moyses,* 186 U. S. 181, 188, 189, 190. True it is that general assignments for the benefit of creditors are acts of bankruptcy, Act of 1898, § 3, clause 4, and since the amendment of 1903, 32 Stat. 797, a receivership of an insolvent debtor with a view to distribution of his property for the benefit of creditors will have the like effect. 1 Loveland on Bankruptcy, 4th ed., § 153. In such cases the bankruptcy proceedings, taken within four months, displace those in the state court and terminate the jurisdiction of the latter. *Randolph* v. *Scruggs,* 190 U. S. 533, 537; *In re Watts & Sachs,* 190 U. S.

1, 31. But it does not follow that state statutes intended to avoid conveyances actually or constructively fraudulent and thereby to promote the equal distribution of insolvent estates, may not be availed of by the trustee. Section 70e of the Bankruptcy Act provides:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

This section as construed by this court gives the trustee in bankruptcy a right of action to recover property transferred in violation of state law. *Security Warehousing Co.* v. *Hand,* 206 U. S. 415, 425, 426; *Knapp* v. *Milwaukee Trust Co.,* 216 U. S. 545, 557.

And a right of action under this subdivision is not subject to the four months' limitation of other sections (60b, 67e) of the Bankruptcy Act. Under this subdivision if a creditor could have avoided a transfer under a state law, a trustee may do the same. *In re Mullen,* 101 Fed. Rep. 413 (opinion by Judge Lowell); 1 Loveland on Bankruptcy, 4th ed. 786, 787; Collier on Bankruptcy, 11th ed., p. 1178, and cases cited in note 439.

Turning now to the sections of the Ohio laws in question,—the right to proceed by course of law to recover particular property transferred as prohibited in § 6344, and to cause the same to be administered for the equal benefit of creditors, as in cases of assignment to trustees for the benefit of creditors, has long been part of the stat-

utory law of Ohio. The part in § 6343 which enables the court to appoint a receiver to take charge of all the assets of the debtor or debtors, including the property conveyed, and administer the same for the equal benefit of creditors, is the new feature of the law.

It is apparent that this section intends to permit the appointment of a receiver to take charge of all the assets of the debtor when the provisions of the statute apply as to the debtor and his transferee, and the latter is required to know of the fraudulent intent on the part of the debtor.

Creditors are not thereby deprived of rights, but in case of bankruptcy proceedings within four months of a general assignment for creditors as was the case here, the property may be brought into the bankruptcy court, or, as in this case, may be in its possession and be retained in that court to be administered for the benefit of general creditors. This state statute is not opposed to the policy of the bankruptcy law or in contravention of the rules and principles established by it with a view to the fair distribution of the assets of the insolvent. It is only state laws which conflict with the bankruptcy laws of Congress that are suspended; those which are in aid of the Bankruptcy Act can stand. *Miller* v. *New Orleans Fertilizer Co.*, 211 U. S. 496.

This view of the sections in question was taken by the Circuit Court of Appeals, 6th Circuit, in *In re Farrell*, 176 Fed. Rep. 505, 509, 510, wherein in the opinion it was said that the changes made by the new statutes were in harmony with the policy of the Bankruptcy Act and in aid of its purposes.

There is much discussion in the books as to what constitutes a bankruptcy act as distinguished from an insolvency law. It is settled that a State may not pass an insolvency law which provides for a discharge of the debtor from his obligations, which shall have the effect of a bankruptcy discharge as to creditors in other States, and this although no general federal bankruptcy act is in effect.

And while it is not necessary to decide that there may not be state insolvent laws which are suspended although not providing for a discharge of indebtedness, all the cases lay stress upon the fact that one of the principal requisites of a true bankruptcy law is for the benefit of the debtor in that it discharges his future acquired property from the obligation of existing debts.

In the case of *Mayer* v. *Hellman*, 91 U. S. 496, this court had before it, while the Bankruptcy Act of 1867 was in force, the question of the validity of the assignment of an insolvent, in Ohio, to trustees for the benefit of all his creditors executed six months before the proceedings in bankruptcy had been taken, and it was held that the assignment was good and the assignees in bankruptcy not entitled to the possession of the property. Mr. Justice Field, in delivering the opinion of the court, said:

"In the argument of the counsel of the defendant in error, the position is taken that the Bankrupt Act suspends the operation of the act of Ohio regulating the mode of administering assignments for the benefit of creditors, treating the latter as an insolvent law of the State. The answer is, that the statute of Ohio is not an insolvent law in any proper sense of the term. It does not compel, or in terms even authorize, assignments: it assumes that such instruments were conveyances previously known, and only prescribes a mode by which the trust created shall be enforced. It provides for the security of the creditors by exacting a bond from the trustees for the discharge of their duties; it requires them to file statements showing what they have done with the property; and affords in various ways the means of compelling them to carry out the purposes of the conveyance. There is nothing in the act resembling an insolvent law. It does not discharge the insolvent from arrest or imprisonment: it leaves his after-acquired property liable to his creditors precisely as though no assignment had been made. The provisions

for enforcing a trust are substantially such as a court of chancery would apply in the absence of any statutory provision. The assignment in this case must, therefore, be regarded as though the statute of Ohio, to which reference is made, had no existence. There is an insolvent law in that State; but the assignment in question was not made in pursuance of any of its provisions. The position, therefore, of counsel, that the Bankrupt Law of Congress suspends all proceedings under the Insolvent Law of the State, has no application."

The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors. Our decisions lay great stress upon this feature of the law—as one not only of private but of great public interest in that it secures to the unfortunate debtor, who surrenders his property for distribution, a new opportunity in life. *Neal* v. *Clark*, 95 U. S. 704, 709; *Traer* v. *Clews*, 115 U. S. 528, 541; *Hanover National Bank* v. *Moyses*, 186 U. S. 181, 192; *Wetmore* v. *Markoe*, 196 U. S. 68, 77; *Burlingham* v. *Crouse*, 228 U. S. 459, 473.

This feature of a bankruptcy law is wholly wanting in the Ohio statutes under consideration. Indeed, there is not now, any more than when *Mayer* v. *Hellman, supra,* was decided, any attempt in the Ohio laws to provide for the discharge of the debtor from his existing debts.

If the Ohio statutes in the feature now under consideration be suspended, it would follow that a person in Ohio might successfully claim a part of the estate which is being administered in bankruptcy, although the conveyance under which the property is claimed is voidable under the laws of the State where it was made and the alleged right

in the property secured. We think that Congress in the Bankruptcy Act did not intend any such result, but meant to permit the trustee in bankruptcy to have the benefit of state laws of this character which do not conflict with the aims and purposes of the federal law. And certainly, in view of the provisions of § 70e of the Bankruptcy Act, Congress did not intend to permit a conveyance such as is here involved to stand which creditors might attack and avoid under the state law for the benefit of general creditors of the estate.

From what we have said it follows that Questions A and B should be answered in the negative, and it is unnecessary to answer Question C.

*So ordered.*