592

J. Morfit Mullen, of Baltimore, Md. (Eli Frank, Jr., of Baltimore, Md., on the brief), for appellants.

Malcolm H. Lauchheimer, of Baltimore, Md. (Sylvan Hayes Lauchheimer, of Baltimore, Md., on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and WAY, District Judge.

SOPER, Circuit Judge.

The sole question for decision in this case is whether the dissolution of an insolvent cor-

poration by appropriate action in a state court deprives the federal court of jurisdiction in bankruptcy proceedings subsequently instituted. On November 28, 1931, a creditors' petition in bankruptcy was filed against the Milburn Realty Company, a Maryland corporation, in the District Court of the United States for the District of Maryland, alleging that the corporation was insolvent, and that while insolvent, an act of bankruptcy had been committed in that within the four months next preceding the date of the filing of the petition, receivers had been appointed and put in charge of its property, under the laws of the state of Maryland, in a proceeding in the circuit court No. 2 of Baltimore City, a state court of equity. The receivers, so appointed, made their appearance in the District Court, and moved to dismiss the creditors' petition for lack of jurisdiction, on the ground that on October 1, 1931, the corporation had been dissolved by decree of the state court in the receivership proceedings. This motion, after consideration, was dismissed by the District Judge [56 F.(2d) 187] and the corporation was adjudicated a bankrupt, from which action, this appeal was taken.

The receivers contend that the National Bankruptcy Act does not apply to a corporation whose dissolution has been fully accomplished before the institution of bankruptcy proceedings. They claim that section 4b of the Bankruptcy Act, 11 U. S. C. § 22 (b), 11 USCA § 22 (b), covers only a corporation in existence and not one which has been extinguished in the manner provided by the law of the state of its creation. That section is as follows: Sec. 4-b. "Any natural person, except a wage earner or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any moneyed, business, or commercial corporation, except a municipal, railroad, insurance, or banking corporation, owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this title."

It is said that the effect of the Maryland statutes with regard to the dissolution of corporations is that when a decree of dissolution has been passed by a court of equity, the life of the corporation is completely ended, and it does not survive as a legal entity for any purpose whatsoever. Emphasis is placed upon the absence from the Maryland law of a provision frequently found in the statutes of other states for the continuance of the life of a corporation, even after dissolution, for the

distribution of its property and the settlement of its affairs. The Maryland statutes (article 23, sections 92, 94, and 96 of the Annotated Code of Maryland) [1] provide that a corporation of the state, determined by legal proceedings to be insolvent, may be dissolved by decree of a court of equity; and that when so dissolved, its property shall vest in receivers named in the decree, and that all preferences and transfers by its officers, which would be void or fraudulent under the insolvency laws of the state if made by a natural person, shall likewise be fraudulent and void, and that the dissolution shall not abate any pending suit by or against the corporation; and that the receiver, with the consent of the court, may institute suit in his own name, or, notwithstanding the dissolution, in the name of the corporation to his use.

The provisions of these statutes were duly complied with by the filing by a creditor of a bill of complaint against the corporation in the equity court in Baltimore, in which it was alleged that the corporation was insolvent both in the sense that it was unable to pay its obligations as they matured, and also in the sense that its assets at their market value were less than its liabilities. The allegations of the bill were admitted, and a decree of the

court was signed whereby the corporation was dissolved, its property was vested in the receivers, and they were authorized to institute any suits or actions in order to prosecute their rights as receivers. So it is said that we should apply the general law concerning a dissolved corporation that it "is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of a natural person in its effect," Oklahoma Gas Company v. Oklahoma, 273 U. S. 257, 259, 260, 47 S. Ct. 391, 392, 71 L. Ed. 634; and we should leave the settlement of the affairs of the dissolved corporation in this case to the state court of equity in the same way as, under the accepted practice, the administration of the estate of a deceased insolvent is left to the probate court of the state of his domicile. Collier on Bankruptcy, 200.

There is no authority to support this position; and it would certainly be contrary to the spirit of the National Bankruptcy Act to hold that insolvent corporations are excluded, by dissolution, from the scope of its provisions, and that the distribution of their assets and the final settlement of their affairs must be left to the state courts. The general rule governing the jurisdiction of the federal courts in bankruptcy is thus stated in Stellwagen v. Clum, 245 U. S. 605, 613, 38 S. Ct. 215, 217, 62 L. Ed. 507: "The federal Constitution, article I, section 8, gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. In view of this grant of authority to the Congress it has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended. While this is true, state laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress. Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606."

See, also, International Shoe Co. v. Pinkus, 278 U. S. 261, 263, 265, 49 S. Ct. 108, 73 L. Ed. 318.

Speaking with reference to insolvent corporations, the Supreme Court said In re Watts & Sachs, 190 U. S. 1, 27, 23 S. Ct. 718, 724, 47 L. Ed. 933: "And the operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the Federal courts in bankruptcy, when properly invoked,

---

[1] 92. "Whenever any corporation of this State, other than a railroad, shall have been determined by legal proceedings to be insolvent or shall be proven to be insolvent by proof offered under any bill filed under the provisions of this section, it may be dissolved, after a hearing according to the practice of courts of equity in this State, upon a bill for that purpose filed in a court of equity of the county or city in which its principal office is located. Such bill may be filed by any stockholder or creditor of the corporation."

94. "Whenever any corporation shall be dissolved by the decree of any court of this State, its property shall vest in its receivers appointed and named therein, and all preferences, payments and transfers, howsoever made by it or by any of its officers on its behalf, which would be void or fraudulent under the provisions of the insolvency laws of this State, if made by a natural person, shall to the like extent and with like remedies be fraudulent and void; and for the purpose of setting aside such preferences, payments and transfers, the receiver of such corporation shall have all the powers vested in the permanent trustee of an insolvent debtor and the date of the filing of the petition or bill by or against such corporation shall, for the purpose of determining the validity of preferences and for all other purposes, be treated as the date of the filing of the petition in insolvency by or against a natural person."

96. "The dissolution of a corporation shall not relieve its stockholders or directors or other officers from any obligations and liabilities imposed on them by law; nor shall it abate any pending suit or proceeding by or against the corporation, and all such suits may be continued with such change of parties, if any, as the court in which the same are pending shall direct. No receiver shall institute suit except by order of the court appointing him; and such suit may be brought in his own name as receiver or (notwithstanding its dissolution) in the name of the corporation, to his use."

in the administration of the affairs of insolvent persons and corporations, is essentially exclusive. * * * The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit; but that rule can have only a qualified application where winding-up proceedings are superseded by those in bankruptcy as to which the jurisdiction is not concurrent."

█ It has been uniformly held, in accordance with these principles, that the dissolution of an insolvent corporation does not put it outside the jurisdiction of the federal court in bankruptcy. It was decided by Judge Morris of the District Court of Maryland, in Re Storck Lumber Co., 114 F. 360, that the Maryland statute then in force providing for the dissolution of an insolvent corporation, the setting aside of unlawful preferences, and the distribution of its assets among the creditors, was in the nature of an insolvent law, and, as such, was superseded by the application of the broad principle that bankruptcy law is to govern the administration of the estates of all insolvent debtors. Similar views have been expressed as to the effect of similar state statutes by courts and text-writers both before and after the decision of In re Storck Company, supra, and there has been no dissent.[2]

The appellants would distinguish this array of authority by pointing out that in most, if not all, of the cases, the corporation had not been completely or validly dissolved when the adjudication took place, or at least that the dissolution was decreed after the proceedings in bankruptcy in the federal court had been instituted. It is said that no court has ever held that a corporation, finally dissolved under a state statute which contains no provision for the continuance of the life of the corporation during the settlement of its affairs, is within the purview of section 4b of the National Bankruptcy Act. It is not

clear that so sweeping a statement is correct; and, in any event, it is evident that the decisions were not based merely on the ground that the corporate life had not completely ceased, but on the broader ground that neither the Legislature nor the courts of a state can take action which restricts the scope of the national bankruptcy system. It has rather been the view of the courts that the National Bankruptcy Act so far controls the dissolution of an insolvent corporation as to prevent its legal extinction by superseding, at least temporarily and to the extent necessary, all state laws which would prevent the creditors from having the assets of insolvent debtors administered in accordance with the terms of the federal act. It has been thought that to hold otherwise would be to allow the states, by a particular form of legislation, or by the action of their courts, to override a law of Congress on a subject over which the Constitution has given to Congress supreme power. See Thornhill v. Bank of Louisiana, Fed. Cas. No. 13,992, Cresson & Clearfield Coal & Coke Co. v. Stauffer (C. C. A.) 148 F. 981, Vassar Foundry Co. v. Whiting Corporation (C. C. A.) 2 F.(2d) 240.

█ Nevertheless, the appellants contend that the federal act of bankruptcy does not supersede the Maryland statutes under discussion because they lack the essential characteristics of a general insolvency law. They contain no express provision for the distribution amongst the creditors of the assets of the corporation (although such distribution is obviously contemplated), and there is no provision giving an insolvent corporation a discharge from all of its debts. The Court of Appeals of Maryland, in Hughes v. Hall, 118 Md. 673, 677, 85 A. 946, seemed to regard the Maryland statute as an insolvency law; but it is argued that this view must not be accepted literally because the Supreme Court in Stellwagen v. Clum and International Shoe Company v. Pinkus, supra, has emphasized the importance of the discharge of the insolvent from his debts in any system of bankruptcy law. It was not decided in either of these cases that there might not be a state insolvent law that would be superseded by the National Bankruptcy Act, although not providing for the discharge of indebtedness. See Stellwagen v. Clum, 245 U. S. 616, 38 S. Ct. 215, 62 L. Ed. 507. Nor was it decided or suggested that the provisions of a state law looking toward the settlement of the affairs of an insolvent corporation must be given effect unless the law comprises all of the essential elements of a general insolvency stat-

[2] In re Independent Ins. Co., Fed. Cas. No. 7,017; Thornhill v. Bank of Louisiana, Fed. Cas. No. 13,-992; Platt v. Archer, Fed. Cas. No. 11,213; In re Washington Marine Ins. Co., Fed. Cas. No. 17,246; Scheuer v. Smith (C. C. A.) 112 F. 407; Cresson & Clearfield Coal & Coke Co. v. Stauffer (C. C. A.) 148 F. 981; In re Munger Vehicle Tire Co. (C. C. A.) 159 F. 901; In re Adams & Hoyt Co. (D. C.) 164 F. 489; Morehouse v. Giant Powder Co. (C. C. A.) 206 F. 24; In re Double Star Brick Co. (D. C.) 210 F. 980; Vassar Foundry Co. v. Whiting Corporation (C. C. A.) 2 F.(2d) 240; 1 Collier on Bankruptcy, p. 212; 1 Remington on Bankruptcy, pp. 145; 149.

ute. It was held that if a state law is not inconsistent with the bankrupt laws enacted by Congress, it will not be superseded, and it may even be availed of by the representatives of the insolvent estate if it is helpful in its administration; but, on the other hand, that a state law is superseded to the extent that it interferes with or restricts the administration of an insolvent estate in the manner provided by the federal statute. Thus it was expressly said in International Shoe Company v. Pinkus, 278 U. S. 265, 49 S. Ct. 108, 110, 73 L. Ed. 318, "States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." It follows that not only those state laws which purport to cover the whole field of insolvency administration are superseded by the national bankruptcy law, but all other state laws to the extent that they hamper or restrict its proper operation.

There was no lack of power in Congress, and there can be no question as to its intent by the use of the term "corporation" in section 4b to include not only corporations in the literal sense, but also those bodies, which having once been true corporations, might be dissolved after insolvency by the state courts. No discussion is needed to show the far-reaching effect on the present system of a holding that would permit any insolvent corporation, after committing an act of bankruptcy, to oust the jurisdiction of the federal court by securing a decree of dissolution from the state under a statute similar to that in Maryland. A vast amount of business is conducted by monied or business corporations, and an utter lack of uniformity would follow if the settlement of the affairs of dissolved corporations was committed to the state courts. One of the acts of bankruptcy specified in section 3 of the act (11 U. S. C. § 21 [11 USCA § 21]), the appointment of a receiver to take charge of the insolvent property under the laws of the state, usually takes place as it did in the pending case in a proceeding for corporate dissolution. The conclusion is irresistible that Congress did not intend to leave the affairs of dissolved corporations to the state courts, but intended to include them within the terms of section 4b. The argument which the appellants have grounded upon the literal meaning of the section leads to so extraordinary a conclusion that it cannot be supposed to have been contemplated by Congress. Hawaii v. Mankichi, 190 U. S. 197, 23 S. Ct. 787, 47 L. Ed. 1016.

The decree of the Maryland court, dissolving the Milburn Realty Company, after it had committed an act of bankruptcy, was ineffectual to prevent the administration of its affairs by the District Court of Maryland in Bankruptcy, and the decree of the District Court will therefore be affirmed; but we do not undertake to say that the Maryland statute is not otherwise valid and entitled to full force and effect.

Affirmed.

Circuit Court of Appeals, Fourth Circuit.