## In re 211 EAST DELAWARE PLACE BLDG. CORPORATION.
### No. 2440.

District Court, E. D. Illinois.
Sept. 24, 1934.

R. P. Perlman, of Chicago, Ill., for receiver.

Friedman, Schimberg & Alster, of Chicago, Ill., for petitioning creditors.

LINDLEY, District Judge.

On July 9, 1934, three petitioning creditors filed in this court a petition under section 77B of the Bankruptcy Act (11 USCA § 207) looking to the reorganization of 211 East Delaware Place Building Corporation, the debtor herein. On August 9, 1934, said petition was duly approved in accordance with the requirements of the act of Congress aforesaid. Thereupon the court appointed H. H. Whittemore as temporary trustee, and directed him to take possession, control, and custody of all the property and assets of the debtor.

George A. Golder has filed herein his petition for instructions from the court, and it appears by stipulation of the parties that on or about September 17, 1929, said petitioner was appointed receiver in the superior court of Cook county, Ill., in an equity cause brought for the foreclosure of trust deed upon the premises at 211 East Delaware place; that he duly qualified as such receiver, took possession of the premises, and has remained in possession thereof until the present time.

On June 29, 1932, upon the application of the Attorney General of the state of Illinois, after notice had been published in a newspaper as provided by law, the superior court of Cook county entered an order dissolving the 211 East Delaware Place Building Corporation, the owner of the equity of redemption in said premises, because of its failure to pay the franchise taxes due the state on the 15th day of November, 1931. The property covered by said trust deed, foreclosure for which was instituted in the superior court of Cook county as aforesaid, constitutes all the assets of the corporation and the receiver. The receiver appointed under said foreclosure proceedings has the custody and possession thereof, but has rented the same to one Jacob Kampel. The receiver suggests that he is willing to abide by the order of this court, but that the same is ambiguous in that it directs the surrender of all the assets of the corporation, whereas he is in possession only of assets now belonging to the stockholders of the corporation, to whom, under the statute of the state of Illinois, title passes upon dissolution of the corporate charter. He suggests further that a court of bankruptcy may not take jurisdiction of a corporation whose charter has been forfeited, and that there is, therefore, nothing upon which this court may act in a proceeding under section 77B (11 USCA § 207).

The obviously fair and reasonable attitude of the petitioner herein to the effect that he is willing to abide the order of the court and comply therewith necessitates a full consideration and careful disposition of his petition by the court.

True it is that dissolution of a corporation works an end to its legal existence and that it cannot thereafter, so far as the laws of the state under which it is created is concerned, have any existence. But it has long been the doctrine of the federal courts, encouraged by the decisions of the Supreme Court of the United States to the effect that jurisdiction in bankruptcy is under the Constitution a paramount one, that a petition in bankruptcy may not be defeated by showing the dissolution of the corporation if the debts thereof have not been fully discharged and that the bankruptcy court cannot be deprived of this paramount jurisdiction in bankruptcy to work out a liquidation or other relief proper in bankruptcy by the formal dissolution by the state authorities.

In Hammond, et al. v. Lyon Realty Co. et al., 59 F.(2d) 592, the Circuit Court of Appeals for the Fourth Circuit had to do with a situation where a corporation had been dis-

solved by a decree of the court of equity in the state court. The receivers of that court were conducting a liquidation of the assets in pursuance of the dissolution. The creditors instituted a bankruptcy proceeding, and the District Court held that though this corporation had been dissolved, the bankruptcy court was not deprived of jurisdiction. The Court of Appeals, in affirming, said:

"It is said that the effect of the Maryland statutes with regard to the dissolution of corporations is that when a decree of dissolution has been passed by a court of equity, the life of the corporation is completely ended, and it does not survive as a legal entity for any purpose whatsoever. Emphasis is placed upon the absence from the Maryland law of a provision frequently found in the statutes of other states for the continuance of the life of a corporation, even after dissolution, for the distribution of its property and the settlement of its affairs. * * * So it is said that we should apply the general law concerning a dissolved corporation that it 'is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of a natural person in its effect,' Oklahoma Natural Gas Company v. Oklahoma, 273 U. S. 257, 259, 260, 47 S. Ct. 391, 392, 71 L. Ed. 634; and we should leave the settlement of the affairs of the dissolved corporation in this case to the state court of equity in the same way as, under the accepted practice, the administration of the estate of a deceased insolvent is left to the probate court of the state of his domicile. * * *

"There is no authority to support this position; and it would certainly be contrary to the spirit of the National Bankruptcy Act [11 USCA] to hold that insolvent corporations are excluded, by dissolution, from the scope of its provisions, and that the distribution of their assets and the final settlement of their affairs must be left to the state courts. The general rule governing the jurisdiction of the federal courts in bankruptcy is thus stated in Stellwagen v. Clum, 245 U. S. 605, 613, 38 S. Ct. 215, 217, 62 L. Ed. 507: 'The federal Constitution, article I, section 8, gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. In view of this grant of authority to the Congress it has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended. While this is true, state laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress. Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606.' See, also, International Shoe Co. v. Pinkus, 278 U. S. 261, 263, 265, 49 S. Ct. 108, 73 L. Ed. 318; * * * In re Watts & Sachs, 190 U. S. 1, 27, 23 S. Ct. 718, 724, 47 L. Ed. 933. * * * It has been uniformly held, in accordance with these principles, that the dissolution of an insolvent corporation does not put it outside the jurisdiction of the federal court in bankruptcy."

Considering the specific contention that the final decree of dissolution deprived the court of jurisdiction, the court said:

"The appellants would distinguish this array of authority by pointing out that in most, if not all, of the cases, the corporation had not been completely or validly dissolved when the adjudication took place, or at least that the dissolution was decreed after the proceedings in bankruptcy in the federal court had been instituted. It is said that no court has ever held that a corporation, finally dissolved under a state statute which contains no provision for the continuance of the life of the corporation during the settlement of its affairs, is within the purview of section 4b of the National Bankruptcy Act [11 USCA § 22 (b)]. It is not clear that so sweeping a statement is correct; and, in any event, it is evident that the decisions were not based merely on the ground that the corporate life had not completely ceased, but on the broader ground that neither the Legislature nor the courts of a state can take action which restricts the scope of the national bankruptcy system. It has rather been the view of the courts that the National Bankruptcy Act so far controls the dissolution of an insolvent corporation as to prevent its legal extinction by superseding, at least temporarily and to the extent necessary, all state laws which would prevent the creditors from having the assets of insolvent debtors administered in accordance with the terms of the federal act. It has been thought that to hold otherwise would be to allow the states, by a particular form of legislation, or by the action of their courts, to override a law of Congress on a subject over which the Constitution has given to Congress supreme power. See Thornhill v. Bank of Louisiana, Fed. Cas. No. 13,992, Cresson & Clearfield Coal & Coke Co. v. Stauffer (C. C. A.) 148 F. 981, Vassar Foundry Co. v. Whiting Corporation (C. C. A.) 2 F. (2d) 240."

It was contended, furthermore, that the state proceedings did not amount to insolvency proceedings, and that, therefore, the bank-

ruptcy court had no jurisdiction. Concerning this, the court said:

"The appellants contend that the federal act of bankruptcy does not supersede the Maryland statutes under discussion because they lack the essential characteristics of a general insolvency law. * * * There was no lack of power in Congress, and there can be no question as to its intent by the use of the term 'corporation' in section 4b · [11 USCA § 22 (b)] to include not only corporations in the literal sense, but also those bodies, which having once been true corporations, might be dissolved after insolvency by the state courts. No discussion is needed to show the far-reaching effect on the present system of a holding that would permit any insolvent corporation, after committing an act of bankruptcy, to oust the jurisdiction of the federal court by securing a decree of dissolution from the state under a statute similar to that in Maryland. A vast amount of business is conducted by monied or business corporations, and an utter lack of uniformity would follow if the settlement of the affairs of dissolved corporations was committed to the state courts. One of the acts of bankruptcy specified in section 3 of the act (11 U. S. C. § 21 [11 USCA § 21]), the appointment of a receiver to take charge of the insolvent property under the laws of the state, usually takes place as it did in the pending case in a proceeding for corporate dissolution. The conclusion is irresistible that Congress did not intend to leave the affairs of dissolved corporations to the state courts, but intended to include them within the terms of section 4b. The argument which the appellants have grounded upon the literal meaning of the section leads to so extraordinary a conclusion that it cannot be supposed to have been contemplated by Congress. Hawaii v. Mankichi, 190 U. S. 197, 23 S. Ct. 787, 47 L. Ed. 1016."

In the case of In re Double Star Brick Company (D. C.) 210 F. 980, a California corporation had forfeited its franchise for nonpayment of the license tax as required by the state statute. The court held that, even though the state decisions supported the view that the forfeiture of the charter under the act referred to operates to terminate the existence of the corporation, the bankruptcy court was not thereby deprived of jurisdiction to administer the estate. The court pointed out the primary purpose of the distribution or other disposal of the debtor's property and said that the court takes jurisdiction of the res rather than of the person of the bankrupt.

In the case of In re Munger Vehicle Tire Company, 159 F. 901, the Circuit Court of Appeals for the Second Circuit had under consideration the effect of the dissolution of the charter of a corporation of New Jersey prior to the filing of a petition in bankruptcy. The forfeiture had been proclaimed because of delinquency in payment of corporate taxes. The District Court had taken jurisdiction, and upon appeal the Circuit· Court of Appeals held that the proclamation of default and forfeiture did not work such a destruction of the corporation as to prevent an adjudication in bankruptcy, or as to deprive the bankruptcy court of jurisdiction.

In the case of In re Storck Lumber Company (D. C.) 114 F. 360, it appeared that prior to the filing of petition in bankruptcy, proceedings had been taken under the statute of Maryland resulting in a decree of the court that the corporation was dissolved and should be deemed to have surrendered its corporate rights, privileges, and franchises. Nevertheless, the jurisdiction in bankruptcy was sustained and an adjudication entered. To the same effect is In re Rainbow Family Laundry Co., 47 A. B. R. 655.

The reasoning of the cases cited appeals strongly to the logic of the situation. Bankruptcy jurisdiction is, as has been said, a · paramount one, granted to the federal courts in the national Constitution. Its purpose is two-fold, one to relieve the debtor, and the other to secure proper distribution amongst the creditors. In the case of a corporation, where there is no surplus over debts, the first purpose is of minor importance and the other all important. Such purpose is fulfilled by a jurisdiction over a res, the administration and distribution of which is the court's purpose, function and duty under its bankruptcy jurisdiction. It is not logical to hold that a proclamation or decree of the state court declaring a forfeiture because of nonpayment of franchise taxes should defeat this jurisdiction so carefully protected by the constitutional grant thereof in 1787. Notwithstanding such declaration of forfeiture, the corporation's property must be properly distributed. It cannot be constitutionally distributed, liquidated or administered if this paramount jurisdiction of the bankruptcy court is to be maintained in any forum other than the bankruptcy court itself.

Congress, by recent legislation, has extended the District Court's jurisdiction to reorganization of the res, and it cannot, by any logical process of thought, be concluded that it was the purpose of Congress to surrender

896

any of the court's paramount jurisdiction, namely; the administration, liquidation, and distribution of the property of a corporation, even though the state authorities have taken away the charter of the corporation.

The receiver files as one of his exhibits a current account. He asks that he and his counsel may be allowed compensation. He reports that a lessee of the property has deposited with him, as receiver, the sum of $6,300 as guaranty for the performance of a certain covenant, and he asks that, if this court should direct him to surrender possession of all assets held by him, the court likewise direct the trustee to assume the obligation to surrender said guaranty fund upon compliance of the lessee with his covenant.

The court is not now in a position to enter any proper order as to compensation. Under the act of Congress, the court must eventually direct the payment of all such reasonable compensation. It seems to have been intended by Congress that prior receivers and other parties having claims for compensation for administrative services should present their application for fixing such reasonable compensation to the court under whose jurisdiction they were appointed. The proper procedure apparently is for that court to enter an order adjudicating such claims, said action to be followed by the action of the bankruptcy court in directing the payment of such of the same as shall be found to be reasonable. Consequently, this court should not at this time act upon the matter of compensation.

As to the guaranty fund of $6,300, it is the belief of the court that same should be surrendered to the trustee and that the latter should hold the same subject to the further order of this court and subject to such equities therein as the lessee may have in accordance with the facts as they may develop.

The court is not in position to know whether the present lease is one of desirability or wisdom in the proper administration of the estate and cannot pass upon questions of policies of administration not now before the court. The acceptance of said guaranty fund by the trustee shall be without prejudice to his right hereafter, if he deems it proper, to take any action concerning the validity or invalidity of said lease or the advisability of affirming it or asking its cancellation.

Accordingly it will be the order of the court, upon the petition of the receiver for instructions, that the latter surrender to the trustee herein all property real, personal, or mixed, now held by him, formerly belonging to the 211 East Delaware Place Building Corporation and now in his possession and custody as receiver, any and all documents, contracts, and leases with reference thereto, and such funds as he has on hand, including said guaranty fund of $6,300. All questions arising upon accounting by the receiver or the fixing of compensation for the administration of said estate shall be reserved for further action by this court.