## In re SURF BLDG. CORPORATION.

### No. 2502–D.

District Court, E. D. Illinois.

Oct. 13, 1934.

Chas. Haffenberg, of Chicago, Ill., for creditors.

McInerney, Epstein & Arvey, of Chicago, Ill., for debtor.

Sonnenschein, Berkson, Lautmann, Levinson & Morse, of Chicago, Ill., for bondholders' committee.

LINDLEY, District Judge.

On August 28, 1934, 27 petitioners filed in this court a petition under section 77B of the Bankruptcy Act as amended (11 US CA § 207), against the Surf Building Corporation as debtor, alleging that they are creditors and seeking the relief provided in said act. Thereafter the Surf Building Corporation filed its answer denying that the petitioners are entitled to the relief prayed. Abel Davis et al., as representatives of a bondholders committee, and certain depositing bondholders filed an intervening petition in which they assert that the petitioners are not entitled to the relief prayed. Both the corporation and said interveners filed petitions for transfer to the United States District Court for the Northern District of Illinois.

The court has heard the evidence submitted upon the issues thus presented.

Some of the petitioners appeared in open court and testified that they were dissatisfied with the results of the long pending litigation in the state court; that they were desirous of realizing something upon their bonds; that conditions were not to their liking; that they had conferred with counsel, had been advised of the benefits to be gained by action under section 77B and had authorized the proceedings to be brought in federal court under section 77B in order that speedy and efficient relief might be had.

Counsel for the petitioners testified that he had examined the state court records and ascertained that a bill for foreclosure had been pending in the state court for a period of three years; that during all said time a receiver had been in charge of the premises; that he had examined other records, talked with officials of the receiver, and of the trustee and with certain members of the bondholders' committee, and that after due consideration he had advised the petitioners to seek relief under section 77B.

It appears further that this corporation has forfeited its franchise for nonpayment of franchise taxes; that it has executed a conveyance to nominees of the bondholders' committee; that the receiver has attempted to operate the property; that losses have resulted; that three years have elapsed since the filing of the bill; that a decree of foreclosure has now been entered; that there has been no advertisement of property for sale; that the bondholders' committee is administered by the chairman of the board of the Chicago Title & Trust Company, which is likewise receiver in the cause in the state court; that 78.23 per cent. of the bondholders have deposited their bonds with the committee; that 21.77 per cent. have not deposited their bonds with the depository; that many, if not all, of the petitioners have deposited their bonds with the committee but are dissatisfied and desire to proceed under section 77B of the Bankruptcy Act.

The evidence is that a proposed plan of reorganization has been assented to by a majority of the bondholders and that it is proposed that in the decree of foreclosure in the state court the court shall fix a price at which the property shall be sold at an adequate reasonable figure so that nonassenting bondholders may be fairly treated. Some of the witnesses testified that they had received no communication from the bondholders' committee for over two years and no interest upon their bonds at any time since foreclosure was instituted.

Upon these facts the court does not conceive that it would be justified in finding that this petition was not filed in good faith. I shall not attempt to decide whether petitioners' fears and dissatisfaction are justified, but when one observes the obvious benefits possible in reorganization of corporations by proceedings under section 77B as compared with effectuation of the same result by a court of chancery, whether it be in the state court or the federal court, it necessarily follows that one cannot be charged with bad faith because he approves that method which works with simpler machinery, less expense, greater saving of time and greater efficiency of result. In bankruptcy, the period of redemption of twelve months in favor of the debtor and of fifteen months in favor of creditors is avoided. In bankruptcy, a majority of creditors must control, and there is no necessity of a careful balancing of the rights of assenting and nonassenting bondholders when considering a just position toward one class as against another in a court of chancery. Unreasonable delay upon the part of unreasonable nonassenting bondholders is avoided; long protracted receiverships are done away with. But one purpose is served and that is the promulgation, with all due diligence, by the creditors or other parties in interest of a plan to reorganize, the consideration of same and an order of court approving or disapproving of same, followed by a conveyance of the property, pursuant to the plan of reorganization if the latter is approved by a majority of the creditors. These advantages and benefits Congress intended to make possible by its amendment to the Bankruptcy Act. The petitioning creditors in the present case have advised with counsel and have been advised of their rights thereunder. They have been dissatisfied with three years' delay. They are not pleased with the prospect of a further delay necessitated by the statutory period of redemption, which may or may not be cut off legally by the action heretofore had. They desire a plan of reorganization in which the chancellor is not compelled to balance the rights of opposing parties, but in which a majority will control under the court's direction, without undue or unreasonable quibbling or delay. Surely such desire on their part cannot be said to be grounded in bad faith.

■ It is argued by the bondholders' committee and by the corporation that the petition cannot be said to have been filed in good faith when and if its authors do not offer contemporaneously with its filing a feasible plan for reorganization. I do not so understand the law. I do not conceive that it is a condition precedent to a passport to admission to the precincts of federal jurisdiction that disillusioned, disappointed lay investors of savings in first lien mortgages, upon supposedly choice metropolitan real estate, shall have ready to spring from their laymen's minds, full fledged plans of finance, where supposedly sophisticated devotees of that involved but obviously little understood science have, in the past few years, frequently signally failed. I understand that Congress intended quite the contrary, for its expressed provision is that a petition may be filed without a plan, and that suggestions for reorganization may be filed subsequently. I hold, therefore, that it is not necessary, in order to constitute good faith, that petitioning creditors who have been dissatisfied by delay and who are confronted by a possibility of still further deferment of realization should be compelled, before they appear in this court, to map out a plan that will appeal to every party in interest. The court of bankruptcy is controlled by equitable principles. It is bound to receive and consider all plans for reorganization, to co-ordinate and reconcile them if possible, and in the end to direct that plan of reorganization which a majority of creditors approve. I am not in sympathy with the view that good faith demands proof of feasibility of a plan tendered at the time the petition is filed. The fact that counsel for petitioners advises the court that he is at this time prepared to offer a tentative plan is significant of the good faith of the petitioners.

■ The court has not sufficient information to determine whether the possession of the receiver in the state court should be superseded. In justice to the petitioning creditors and to the other parties in interest, however, under its duty under the act of Congress, the court must eventually determine what policy is for the best interest of the parties. It can best do this through a temporary trustee, whose duty it will be to investigate the property, the history of the litigation, and all the other facts surrounding the subject-matter, from an impartial, neutral point of view, for the purpose of advising the court as to the exact situation, so that the court may be fully informed as to the necessity or desirability of retention of jurisdiction by the state receiver or of taking possession of property and of proceeding with an attempted reorganization.

■ It may be well to comment upon one or two contentions submitted by the respondents. It is insisted that an equity receivership, growing out of a foreclosure proceeding which vests in the receiver of a court of equity the custody and possession of all the assets of the corporation, is not an equity receivership within the meaning of the statute. I have already said in other cases, probably so often as justly to be accused of tiresome reiteration, that a receivership in equity is always incidental to some other ultimate purpose; that equity jurisprudence recognizes no such proceedings as one which has for its only prayer for relief, receivership, but that all receivers in equity are appointed, whether in dissolution of partnerships, in mortgage foreclosure or upon creditors' petition, in subordination of and incidental to the main purpose of the litigation. This court is of the opinion that Congress did not intend, by the provisions of section 77B, to limit jurisdiction under that section to equity receiverships other than those in foreclosure cases. To do so would be to defeat the purpose of the act in a very important branch of equity jurisdiction.

■ Nor is the fact that the corporation has lost its charter any bar to the jurisdiction of this court. In the recent case of In re 211 East Delaware Place Building Corporation, a corporation, 7 F. Supp. 892, this court pointed out that to hold that the loss of franchise for nonpayment of taxes deprives the federal court of jurisdiction would be to deprive the United States Court of its constitutional jurisdiction to liquidate, administer, marshal, and distribute in bankruptcy, assets of any debtor.

Under the peculiar facts of this case, it appears that the interests of the parties will best be served by a transfer of the proceedings to the Northern District of Illinois. I have previously said that if I can perform such services of aiding in the relief of the congestion in the Chicago courts as I am called upon to furnish, by handling part of the same in my own district, my own convenience would be promoted, by thus making it unnecessary to sit elsewhere. But I take it that my conven-

298

ience must yield to the interests of the parties.

Accordingly it is ordered by the court that the petition herein has been filed in good faith; that it is proper in form and that the court has jurisdiction under the same. It is further ordered that the question of appointment of a temporary trustee herein to make the investigation hereinbefore outlined, and to report to the court so that it will be fully advised from the point of view of neutrality as to what should be the policy of the court, be and the same is reserved for action by the court to whom this cause is transferred.

It is further ordered that this cause be and it is hereby transferred to the United States District Court for the Northern District of Illinois, Eastern Division; that jurisdiction under these proceedings be vested in that court to the exclusion of any further jurisdiction in this court, and that the temporary trustee make his report to that court.

It is further ordered that the clerk of this court transmit to the clerk of the United States District Court for the Northern District of Illinois, Eastern Division, all pleadings, papers, and files herein.