**In re DRACO REALTY CORPORATION.**

District Court, S. D. New York.

June 3, 1935.

Karelsen & Karelsen, of New York City (Max J. Rubin and Frederick Baum, both of New York City, of counsel), for petitioning creditors.

Van Vorst, Siegel & Smith, of New York City (Alexander B. Siegel, of New York City, of counsel), for debtor.

Weil, Gotshal & Manges, of New York City (Poppenhusen, Johnston, Thompson & Cole, of Chicago, Ill., and Wolf, Block, Schorr & Solis-Cohen, of Philadelphia, Pa., and Sylvan Gotshal, of New York City, of counsel), for bondholders' committee.

Jacob A. Freedman, of Brooklyn, N. Y. (Archibald Palmer, of New York City, of counsel), for answering creditors.

HULBERT, District Judge.

Motion by debtor, and three answering creditors, supported by a bondholders' committee, to dismiss an involuntary petition filed under section 77B of the Bankruptcy Act (11 USCA § 207).

Petitioners, like the answering creditors, are owners of first mortgage 6 per cent. gold bond certificates, and allege: "The value of the security covering said claims represented by the aforesaid bonds is not in excess of $500 for each of said bonds of $1,000 principal amount; that the foregoing bonds are now valued in the market at not in excess of $250 for each $1,000 bond. That said claims of the petitioners are unsecured to the aggregate extent of at least $15,000."

Therefore, petitioners assert they are creditors having provable claims against the debtor and allege that the debtor is unable to meet its obligations in the ordinary course of business as they mature, is wholly insolvent, and that a prior proceeding in equity receivership is pending, thus dispensing with the necessity for an allegation of an act of bankruptcy within four months of the filing of said petition on April 30, 1935.

Winfred Realty Corporation, being the owner of property known as Hotel Drake, at Park avenue and Fifty-Sixth street, borough of Manhattan, New York City, made a trust deed or mortgage dated May 1, 1927, covering the fee of said premises, to the Chase National Bank of the city of New York, as trustee, to secure the bond of Winfred to said trustee in the sum of $3,750,000. The trustee issued denominational certificates assigning ratable shares in the bond and mortgage to purchasers and certificates in the amount of $3,417,000, are outstanding.

The trust mortgage also included the furniture and fixtures "in the lobby, dining room, halls and other public rooms," but expressly excluded the furniture and fixtures in the guest rooms or apartments.

On December 15, 1927, Winfred conveyed to Draco Realty Corporation the real property, together with *all* of the fixtures and furniture, both in the public rooms *and in the guest rooms or apartments*. The debtor did not assume the payment of the bond and mortgage.

Upon default in the payment of the interest due November 1, 1932, the trustee under said mortgage instituted a foreclosure action in the New York Supreme Court, New York county. Receivers were appointed therein, limited specifically to the mortgaged property and authorized to lease the unmortgaged chattels from

Draco for a substantial rental. No personal judgment was demanded of the debtor, which, it is alleged in the answer, owns other real estate.

It is alleged by petitioners that on October 7, 1932, the debtor executed and delivered to said trustee a chattel mortgage conveying all of the furniture "in the lobby, dining rooms, halls and other public rooms and the real property commonly known as the Hotel Drake as more fully described and enumerated in Schedule A annexed to said chattel mortgage." and that the property conveyed by said chattel mortgage was subject to the lien of the trust deed and merely covered property already subject thereto, but that "by reason of the foregoing facts a serious question exists as to whether the aforesaid transfer by Winfred Realty Corporation to Draco Realty Corporation of the furniture contained in the guest rooms and apartments of said Hotel Drake was a transfer made in fraud of the creditors and lienors of Winfred Realty Corporation under the laws of the State of New York, and whether therefore said furniture is legally subject to the lien of said Trust Deed and said chattel mortgage and to the rights of the creditors and lienors of the debtor Winfred Realty Corporation." It is further contended by the petitioners, that both Winfred and Draco are wholly owned subsidiaries of Bing & Bing, Inc., but facts are not alleged to bring this claim within the principle so well stated by Lehman, J., in Shelton Holding Corporation v. 150 East Forty-eighth Street Corporation, 264 N. Y. 339, 191 N. E. 8.

It is also conceded by the petitioners that the bondholders' committee, which supports the motion of the debtor, was formed about the time of the commencement of the action to foreclose said trust mortgage pursuant to the terms of a deposit agreement dated November 2, 1932, and that while said committee has been endeavoring to work out a plan of reorganization for the protection of bondholders, the latter are so numerous and widely scattered that the committee has not been able, and has not attempted, to promulgate any plan through the federal or state courts.

On the other hand, the papers before me on this motion establish that the committee encountered difficult problems which it has required time to solve.

Believing that no reorganization could be effected without the co-operation and consent of Bing & Bing, Inc., the committee negotiated with them over a period of eighteen months. An agreement was effected in June, 1934, whereby the debtor consented to accept ⅛ of the new securities to be issued under a plan of reorganization and a five-year management contract in exchange for the unmortgaged furniture, furnishings, and kitchen equipment. Operation of the Hotel Drake by the receivers, under the management of Bing & Bing, Inc., has, meanwhile, resulted in an increase of income sufficient to pay all tax arrears and current taxes, including the first quarter of 1935. No plan of readjustment or reorganization could, however, be accepted by the bondholders' committee under the deposit agreement referred to, until it had been submitted to a board of arbitration appointed by the American Arbitration Association, and such board, after hearings, on notice, was empowered to alter, modify, or amend in any manner deemed advisable before approving the plan. The board of arbitration so nominated, upon request of the bondholders' committee, consisted of Hon. Spruille Braden, Mr. Morton R. Cross, and Mr. George W. Naumberg, to whom the plan of reorganization was submitted on November 21, 1934, at a public hearing, on notice to all known bondholders, and after 27 meetings, the plan was approved by the arbitrators, with modifications, and incorporated in a new agreement, signed by the bondholders' committee, the debtor and Bing & Bing, Inc., on April 16, 1935. No objection has been raised thereto by the trustee.

On April 18, 1935, the Supreme Court, New York county, assumed jurisdiction over the promulgation of the plan of reorganization filed by the bondholders' committee, representing over 49 per cent. of the bondholders, and authorized them to intervene in said proceeding. By a further order dated May 6, 1935, the New York Supreme Court appointed a referee to hear and determine the fairness of said plan of reorganization and such hearings were ordered to begin before said referee on May 29, 1935. On May 10, 1935, a further order was made by the New York Supreme Court, permitting an independent committee of bondholders, representing bonds aggregating an additional 6 per cent. in principal amount to intervene in said proceeding, and such com-

mittee has appeared and approved such plan.

While the instrument upon which petitioners' claims are founded is the direct and sole obligation of Winfred Realty Corporation, petitioners are *creditors* of the debtor.

Section 77B, subd. (b), cl. (10) of the act, 11 USCA § 207 (b) (10), provides:

"The term 'creditors' shall include *for all purposes of this section* and of the reorganization plan, its acceptance and confirmation, *all holders of claims of whatever character* against the debtor *or its property,* including claims under executory contracts, *whether or not such claims would otherwise constitute provable claims under this Act* [title]. The term *'claims' includes* debts, *securities,* other than stock, liens, or other interests *of whatever character."* (Italics mine.)

But, for the purpose of filing a petition under section 77B, subd. (a), of the act, 11 USCA § 207 (a), provides that "Three or more creditors" must have *"provable* claims" *against the corporation,* which is to become the debtor. If upon the approval of the petition herein, the pending reorganization proceedings in the New York Supreme Court should fail and the Hotel Drake property should be sold in the foreclosure action and result in a deficiency judgment and this court should direct a liquidation of the debtor as provided in clause (8) of subdivision (c), § 77B of the Act, 11 USCA § 207 (c) (8), the petitioners would not be creditors. It seems anamolous that creditors under the reorganization act, who could not prove a claim in bankruptcy, should be heard as sole petitioners to inaugurate a reorganization proceeding under section 77B, unless such creditors have *provable claims* against *the corporation* sought to be made the debtor. This construction seems to me to be sustained by the language of subdivision (a), which provides that only three or more creditors *who have provable claims* may appear *prior to the hearing* provided for in subdivision (c), cl. (1), of this section, 11 USCA § 207 (c) (1), and controvert the facts alleged in the petition or answer.

Surely the legislators would not have limited creditors to those having *provable claims against the corporation* if it had been intended that any creditor of the debtor within the meaning of section 77B, subd. (b), cl. (10), should have the right to petition or oppose the institution of the proceeding.

Passing on to the consideration of the question whether a prior equity receivership proceeding is pending, notwithstanding the determination made in other districts in such cases as In re Granada Hotel (D. C.) 9 F. Supp. 909; In re Surf Building Corp. (D. C.) 11 F. Supp. 295; In re Flamingo Hotel (not reported),[1] and in this District, In re Broadway-Barclay Corp. (decided April 12, 1935, no opinion, clerk's file No. 61329), I entertain an opinion contra.

The language of the statute, "if a prior proceeding in bankruptcy or equity receivership," to my mind, contemplates something more than a receivership in an action to foreclose a mortgage upon a single or separate property of a debtor, who may have a diversity of assets and be willing to lose a property not regarded as a profitable investment, where no deficiency judgment is entailed.

As Senior Judge Knox said, in Re 2168 Broadway Corp. (D. C.) 11 F. Supp. 404 (decided May 8, 1935): "In construing the words 'equity receivership' as employed in section 77B, it is necessary to take note of the fact that apparently they are used in apposition to the phrase 'a prior proceeding in bankruptcy' which proceeding, of course, looks forward to the ratable distribution of a bankrupt's assets among its creditors. Such is not the necessary or usual objective of a foreclosure receivership."

In the instant case, if the property in question were sold under judgment of foreclosure, there would be no recovery against the Draco Realty Corporation, which would still own the realty and chattels, unencumbered by said trust mortgage, not legally applicable to the claim of the petitioners, except in the event of the approval of this petition, which is not warranted upon the facts shown, and the petition is dismissed.

---

[1] Oral and not for publication.