In re DBSI, INC., et al., Debtors.

James R. Zazzali, as Trustee of the DBSI Estate Litigation Trust created by operation of the Second Amended Joint Chapter 11 Plan of Liquidation, Plaintiff,

v.

Douglas L. Swenson, et al., Defendants.

Bankruptcy No. 08–12687(PJW).
Adversary No. 10–54649(PJW).

United States Bankruptcy Court,
D. Delaware.

Jan. 27, 2012.

ment to license intellectual property especially where, as here, the availability of a product is essential to the life of the business. *See, e.g., Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27 (2d Cir.1995) (affirming preliminary injunction requiring defendant to license children's book to book publisher); *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904 (2d Cir.1990) (reversing denial of preliminary injunction where news wire service would be irreparably harmed by termination of news photograph service); *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.,* 754 F.Supp.2d 616 (S.D.N.Y.2010) (enjoining termination of licensing and distribution agreement for medical device product). 4Kids has asserted that it is entitled to seek both specific performance *and* monetary damages for injuries caused by Licensor's breach. The extent to which 4Kids is entitled to damages, including attorneys' fees, as a result of Plaintiffs' conduct, remains to be determined another day.

Brian D. Nicholas, Deputy Attorney General, State of Idaho, Boise, ID, for the Movant States.

F. Mark Bromley, Assistant Attorney General, Wisconsin Department of Justice, Madison, WI, for the State of Wisconsin.

Natasha M. Songonuga, Gibbons P.C., Wilmington, DE, Brian J. McMahon, Michael F. Quinn, Gibbons P.C., Newark, NJ, to James R. Zazzali, Trustee for the DBSI Estate Litigation Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion to dismiss (the "Motion") (Doc. # 103) the Third through Sixth Causes of Action in James R. Zazzali's ("Trustee") Second Amended Complaint (the "Complaint") (Doc. # 33). The Motion is filed by numerous states named by Trustee in the Complaint (the "Movant States"),[1] pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Counts Three through Six seek

---

1. The "Movant States" refers to the taxing agencies of Arizona, Colorado, California, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Maine, Michigan, Missouri, Nebraska, New Jersey, New Mexico, North Carolina, Ohio, Oregon, Utah, Virginia, and Wisconsin, as named by Trustee. The state of Wisconsin filed a separate motion to dismiss (Doc. # 28)

but joined in with the other states in their collective reply (Doc. # 117). Thus, this opinion is directed to both Doc. # 103 and Doc. # 28.

2. Federal Rule of Civil Procedure 12(b)(6) is made applicable to adversary proceedings by

to recover allegedly fraudulent transfers from the Movant States under § 544(b)(1) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, incorporating applicable provisions of Idaho law. The principal question presented here is whether the Movant States sovereign immunity was abrogated for suits under § 544(b)(1) and relevant state laws. For the reasons discussed below, I find that it was abrogated and I will deny the Motion.

## Background

DBSI, Inc. and certain of its affiliates filed bankruptcy petitions under chapter 11 of the Bankruptcy Code on November 6, 2008. A plan of liquidation was confirmed on October 26, 2010, resulting in the appointment of Trustee to administer the DBSI Estate Liquidation Trust (Doc. # 5924). As that confirmation order sets forth in greater detail, DBSI, Inc. and its affiliates were operated as a single enterprise under the control of a small group of insiders. (*Id.* ¶ 27.) Trustee commenced this adversary proceeding to recover allegedly fraudulent transfers made to insiders

and to recover transfers made on behalf of the insiders to the Movant States.[3] Trustee seeks to recover transfers made in the two years prior to the petition date pursuant to § 548, and in the four years prior to the petition date under § 544(b)(1). The Motion does not address § 548, but challenges Trustee's right to seek recovery under § 544(b)(1), incorporating Idaho's fraudulent transfer statutes, Idaho Code Ann. §§ 55–906, 55–913, 55–914, 55–916, and 55–917 (the "State Laws").[4]

The Movant States seek to dismiss Counts Three through Six under Federal Rule of Civil Procedure 12(b)(6). The Movant States concede that "[w]ith the exception of the sovereign immunity objections raised herein, the claim ... otherwise satisfies the requirements for such a claim," at least for the purpose of the Motion. (Doc. # 103, at 4). Thus, the Motion squarely turns on the scope of the Movant States' sovereign immunity.

The Movant States argue that they did not waive sovereign immunity with respect

---

Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

3. Trustee's claims against the Internal Revenue Service are addressed in Doc. # 30.

4. Idaho adopted the Uniform Fraudulent Transfer Act, effective in 1987 and codified in Idaho Code Ann. §§ 55–910 to 55–921. The Third Count of the Complaint pleads actual fraud under §§ 55–913(a) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) With actual intent to hinder, delay or defraud any creditor of the debtor"). The Fourth Count of the Complaint pleads constructive fraud under §§ 55–913(b) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (b) Without receiving a reasonably

equivalent value in exchange for the transfer or obligation ...."). The Fifth Count in the Complaint pleads constructive fraud under §§ 55–914(1) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."). The Sixth Count in the Complaint pleads fraud under § 55–906 ("Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void ...."). Counts Four through Six of the Complaint rely on the relevant State Laws, incorporated via §§ 544(b), 550, and 551 of the Bankruptcy Code.

to the relevant State Laws. They argue that for Trustee to assert claims under the State Laws, § 544(b)(1) requires the existence of an actual unsecured creditor who could successfully assert claims under the State Laws against the Movant States. Because the Movant States did not waive their sovereign immunity, they argue, no actual unsecured creditor could successfully assert claims under the State Laws against them. Therefore, the Movant States conclude that § 544(b)(1) cannot be satisfied and Counts Three through Six should be dismissed.

Trustee argues that the Movant States cannot use sovereign immunity as a defense against the State Laws. Trustee argues that in *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006), the Supreme Court held that the states subordinated their sovereign immunity rights to Congress's properly exercised Article I Bankruptcy powers. Congress, Trustee argues, properly exercised its Article I power in enacting 11 U.S.C. § 106(a)(1),[5] which expressly provides that sovereign immunity is abrogated as to "governmental units," including the Movant States, with respect to § 544. This constitutional subordination, Trustee argues, applies to § 544(b)(1) and State Laws referenced through § 544(b)(1).[6] Additionally, Trustee argues that he has rights greater than those possessed by the unsecured creditor upon whom a § 544(b)(1) claim is based. Therefore, Trustee concludes that sovereign immunity

is no defense for the Movant States and that the Motion should be denied.

## Standard of Review

In considering a motion to dismiss, I must accept all factual allegations as true, construe the complaint in the light most favorable to the non-movant, and determine whether, under any reasonable reading of the complaint, the non-movant may be entitled to relief. *Rea v. Federated Investors*, 627 F.3d 937, 940 (3d Cir.2010).

## Discussion

The central question presented in the Motion is whether the Movant States sovereign immunity was abrogated for fraudulent transfer actions brought under § 544(b)(1) and the State Laws.

I find that the state sovereign immunity issue presented here is controlled by the Supreme Court's opinion in *Katz*, 546 U.S. at 356, 126 S.Ct. 990. As I view it, pursuant to *Katz*, I must determine (1) whether those who crafted the Bankruptcy Clause intended to give Congress the power to authorize courts to avoid fraudulent transfers and recover the relevant property, and (2) whether there is a relevant law on the subject of bankruptcy that Congress applied to the Movant States and other creditors in the same way. *See Katz*, 546 U.S. at 372, 379, 126 S.Ct. 990 ("[T]hose who crafted the Bankruptcy Clause would have understood it to give Congress the power to authorize courts to avoid preferential transfers and to recover the trans-

---

**5.** Section 106(a) of the Bankruptcy Code states: (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: [listing many sections of the Bankruptcy Code, including] Sections ... 544, ... 547, 548....

**6.** Section 544(b) of the Bankruptcy Code states: (b)(1) Except as provided in paragraph

(2) [the charitable contribution exception inapplicable here], the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

ferred property.... Congress may, at its option, either treat States in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from operation of such laws. Its power to do so arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the [Constitutional] Convention, not by statute."). I answer both of *Katz's* questions affirmatively. Therefore, I conclude that the Movant States cannot invoke sovereign immunity with respect to Trustee's Counts Three through Six.

■ No state sovereign immunity protection exists in proceedings pursuant to laws on the subject of bankruptcies, where such laws are properly labeled.[7] The Supreme Court held in *Katz* that this was an inescapable conclusion, based on the fact that states surrendered their relevant sovereign immunity in the plan of the convention. *See Katz,* 546 U.S. at 377, 126 S.Ct. 990 ("The ineluctable conclusion, then, is that States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.' ").

One of the many reasons the states surrendered this immunity was to prevent assertions of sovereign immunity from frustrating equitable distributions of the *res* of the bankruptcy estate among a debtor's creditors. *See Katz,* 546 U.S. at 363–64, 126 S.Ct. 990. Another was to promote the debtor's "fresh start." *Id.* These aims, and the desire for uniform application of the bankruptcy laws, would be jeopardized if the states were able to draw resources from the *res* or retain estate property when other creditors were unable to do so. *See id.* at 362–64, 126 S.Ct. 990 (discussing

the importance of uniformity and noting that "states ... are bound by a bankruptcy court's discharge order no less than are other creditors.") (citation and internal quotation marks omitted). *Katz* also described other historical problems that led to the states' surrender of sovereign immunity. *See id.* at 364–66, 375–77, 126 S.Ct. 990.

■ As *Katz* held, Congress "has the power to enact bankruptcy laws the purpose and effect of which are to ensure uniformity in treatment of state and private creditors." *Id.* at 377 n. 13., 126 S.Ct. 990 With this power, Congress is authorized to treat state sovereigns the same way under the bankruptcy laws as it treats non-sovereign creditors. *Id.* at 379, 126 S.Ct. 990 ("Congress may, at its option, either treat [s]tates in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from operation of such laws. Its power to do so arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the Convention, not by statute."). This power clearly includes, and is in fact, the ability to subordinate state sovereignty with respect to proceedings in the area of bankruptcy laws. *Id.* at 377, 126 S.Ct. 990 ("The power to enact bankruptcy legislation was understood to carry with it the power to subordinate state sovereignty, albeit within a limited [bankruptcy] sphere.").

Moreover, contrary to the Movant States' contention, *Katz* held that the Eleventh Amendment did not secure sovereign immunity protection for unprotected areas exposed by the states' surrender in the plan of the convention. *See Katz,* 546 U.S. at 375, 126 S.Ct. 990 ("This histo-

---

**7.** In *Katz,* footnote 15 noted that **labeling** a law a "bankruptcy" law would not necessarily make it a law on the subject of bankruptcy.

*See Katz,* 546 U.S. at 378 n. 15, 126 S.Ct. 990 (emphasis added).

ry strongly supports the view that the Bankruptcy Clause of Article I, the source of Congress's authority to effect this intrusion upon state sovereignty, simply did not contravene the norms this [Supreme] Court has understood the Eleventh Amendment to exemplify.").[8]

The Movant States direct my attention to *Katz's* discussion of *in rem* jurisdiction and matters ancillary to *in rem* jurisdiction, arguing that I should be concerned with *Katz's* "novel jurisdictional concept" and therefore apply *Katz* narrowly. (Doc. # 104, at 40.) Their argument is unavailing. The states' surrender of sovereign immunity included "**whatever sovereign immunity** they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Katz,* 546 U.S. at 378, 126 S.Ct. 990 (emphasis added). The discussion of *in rem* jurisdiction is neither a potential limit on the states' surrender of immunity with respect to the laws on the subject of bankruptcies, nor a troubling novel jurisdictional concept.[9] However, as *Katz* recognizes, the blurred distinctions and perplexing case law confused *in rem,* ancillary to *in rem,* and even *in personam* proceedings in many respects. *See id.* at 371–73, 126 S.Ct. 990.

Therefore, ultimately, *Katz* mercifully rendered the various "appellations" inconsequential to its holding. *See Katz,* 546 U.S. at 370, 126 S.Ct. 990 ("The power granted to Congress by that [Bankruptcy] Clause is a unitary concept rather than an amalgam of discrete segments. The Framers would have understood that laws 'on the subject of Bankruptcies' included laws providing, in certain limited respects, for more than simple adjudications of rights in the *res*."). While *Katz* dealt with preferential transfers, whereas here I deal with fraudulent transfers, the parallel is clear. *Katz* found that "[w]hatever the appropriate appellation [*in rem,* ancillary to *in rem,* or *in personam* ], those who crafted the Bankruptcy Clause would have understood it to give Congress the power to authorize courts to avoid preferential transfers and to recover the transferred property." *Katz,* 546 U.S. at 372, 126 S.Ct. 990. Instead of looking to whether the actions at issue were based on the court's *in rem* jurisdiction, or distinguishing amongst various other appellations, *Katz* teaches us to look to whether the Framers would have understood Congress to have the power to authorize the court take the actions in question. *See* Richard Lieb, *State Sovereign Immunity: Bankruptcy is Special,* 14 Am. Bankr.Inst. L. Rev. 201, 230 (2006) ("The crucial underpinning of *Katz* was that in crafting the Bankruptcy Clause, the Framers 'would have understood [the Bankruptcy Clause] to give Congress the power to authorize courts to avoid preferential transfers and to recover the transferred property.' ").

This brings me to my determination that just as those who crafted the Bankruptcy Clause would have understood the Clause to give Congress the power to authorize courts to avoid preferential transfers and

**8.** The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Notably, the Eleventh Amendment is understood "to stand not so much for what it says, but for the presupposition of our constitutional structure which it con-

firms. . . ." (citation omitted). *Katz,* 546 U.S. at 375, 126 S.Ct. 990.

**9.** *See generally* Susan E. Hauser, *Necessary Fictions: Bankruptcy Jurisdiction after Hood and Katz,* 82 Tul. L.Rev. 1181 (2008) (discussing *in rem,* ancillary to *in rem,* and *in personam* jurisdiction in the context of *Katz,* bringing light to the Movant States position.).

to recover the relevant property, so too would they have understood that Clause to give Congress the power to authorize courts to avoid fraudulent transfers and to recover the relevant property.

### Fraudulent Transfers and Congress's Authority

■ I find that avoiding fraudulent transfers and recovering the attendant property fell within the scope of Congress's understood authorizing power. In *Katz,* this determination was based on whether the activities at issue, avoiding preferential transfers and recovering property, were core aspects of the administration of the bankrupt estates since at least some point in the eighteenth century. *Katz,* 546 U.S. at 372, 126 S.Ct. 990. The "predicate" for finding the activities in *Katz* within Congress's understood authorizing power was clearly that "the courts had entertained preference suits 'since at least the [eighteenth] century.'" *See* Lieb, *supra,* at 230. Notably, at this stage of the analysis, it was immaterial against whom such preference suits were brought. Thus, *Katz* found that avoiding preferential transfers and recovering the attendant property fell within Congress's understood authorizing power, and cited English precedents predating the Constitution for support. *See Katz,* 546 U.S. at 372, 126 S.Ct. 990.

Following *Katz,* I look to prior cases and history to determine that fraudulent transfer suits were in fact entertained "since at least the [eighteenth] century." *Id.* In a statement directly on point, the Supreme Court declared, "There is no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late [eighteenth] century England." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 43, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). This comports with my understanding of the long tradition of fraudulent transfer law, including the cores of actual and constructive fraud. *See, e.g., BFP v. Resolution Trust Corp.,* 511 U.S. 531, 540–41, 114 S.Ct. 1757, 128 L.Ed.2d 556 (discussing the roots of modern fraudulent transfer laws); *see Collier on Bankruptcy,* ¶ 548.01 (16th ed.) ("Fraudulent transfer law is an **elemental** and ancient part of debtor-creditor relations.") (emphasis added); *see also* Statute of Elizabeth, ch. 5 (1571) (the commonly cited statutory origin of fraudulent conveyance law); *In re Twyne's Case,* 3 Co. Rep. 806 (Star Chamber 1601) (the earliest cited fraudulent transfer case); *United States v. Field (In re Abatement Envtl. Res., Inc.),* 301 B.R. 830 (D.Md.2003), *aff'd on other grounds,* 102 Fed.Appx. 272, 276 (4th Cir.2004) (tracing early sixteenth-century fraudulent conveyance law to § 67(e) of the 1898 Bankruptcy Act).

In criticizing the plurality in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), for invalidating all of the jurisdictional basis for the 1978 Bankruptcy Code rather than, at most, the provision of 28 U.S.C. § 1471 which gave bankruptcy courts the power to decide affirmative prepetition state law contract claims, a non-traditional element of bankruptcy jurisdiction, Justice White observed:

> **The routine in ordinary bankruptcy cases now, as it was before 1978,** is to stay actions against the bankrupt, collect the bankrupt's assets, require creditors to file claims or be forever barred, allow or disallow claims that are filed, **adjudicate preferences and fraudulent transfers,** and make pro rata distributions to creditors, who will be barred by the discharge from taking further actions against the bankrupt." (Emphasis added.)

458 U.S. at 96, 102 S.Ct. 2858 (White, J., dissenting). I believe that just as the avoidance of preferences has been entertained since at least the eighteenth century and a core aspect of the administration of bankrupt estates, the same is true in the case before me with respect to avoiding fraudulent transfers. Therefore, just as avoiding preferential transfers and recovering the attendant property was within the scope of Congress's understood authorizing power, I find the same is true with respect to avoiding fraudulent transfers and recovering the attendant property.

**Applying Section 106 of the Bankruptcy Code**

After establishing above that the power to enact bankruptcy legislation was understood to carry with it the power to subordinate state sovereignty,[10] and that avoiding fraudulent transfers and recovering the attendant property easily falls within the scope of Congress's understood authorizing power, I turn to the second question posed by *Katz:* whether there is a relevant law on the subject of bankruptcy that Congress applies to states and other creditors alike, authorizing courts to avoid fraudulent transfers and recover the attendant property. The answer is yes, as found in § 106(a) of the Bankruptcy Code. 11 U.S.C. § 106(a).

As set forth above, § 106(a)(1) provides that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following," and then lists sixty Bankruptcy Code sections, including § 544. 11 U.S.C. § 106(a)(1). In turn, § 544(b)(1) provides that "the trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding

an unsecured claim. . . ." 11 U.S.C. § 544(b)(1). In this case, the "applicable law" includes the State Laws referenced above.

The inclusion of § 544 in § 106(a) is analogous to that of the inclusion of § 547 in § 106(a), which *Katz* found to be within Congress's power. *See Katz,* 546 U.S. at 379, 126 S.Ct. 990 ("Congress may, at its option, either treat States in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them. . . ."). I find that the inclusion of both §§ 544 and 547 is undoubtedly within Congress's power. *Collier on Bankruptcy,* ¶ 106.02[2][b] (16th ed.) ("The constitutionality of the Bankruptcy Code sections listed in section 106(a) is not in doubt, and thus there is no reason to believe Congress exceeded its authority under the Bankruptcy Clause in including states within the coverage of those provisions."). It is apparent that Congress chose to apply both §§ 544 and 547, and the others listed in § 106(a), to states and non-state creditors alike.

As I discussed in *Zazzali v. Swenson (In re DBSI, Inc.),* Adv. No. 10–54649, 2011 WL 607442, at *6 (Bankr.D. Del. Feb 11, 2011), § 106(a)(1) applies to the state law causes of action available under § 544(b)(1). Since that opinion, two other courts have addressed the proper interpretation of § 106(a)(1) and the interplay of that provision with § 544(b)(1). *See Equip. Acquisition Res., Inc. v. United States (In re Equip. Acquisition Res., Inc.),* 451 B.R. 454 (Bankr.N.D.Ill. June 22, 2011); *Furr v. United States (In re Pharmacy Distrib. Servs., Inc.),* 455 B.R. 817 (Bankr.S.D.Fla. Aug.17, 2011). The court in *Equip. Acquisition* wholly agreed with the majority of courts (including this Court) that have addressed the issue, find-

---

10. *Katz,* 546 U.S. at 377, 126 S.Ct. 990.

ing that when Congress abrogated sovereign immunity as to § 544 causes of action, Congress intended to include those state law causes of action available under § 544(b)(1). *See In re Equip. Acquisition,* 451 B.R. at 465. Similarly, the *Pharmacy Distrib.* court agreed, finding that if § 106 did not abrogate sovereign immunity as to § 544 and to the state law causes of action available under § 544, it would lead to an "absurd result." 455 B.R. at 821. The *Pharmacy Distrib.* analysis is worth quoting at length:

> The Court is unable to ascertain any claim that would constitute "applicable law" under section 544 for which Congress has explicitly waived sovereign immunity independent of section 106. To require that there be a separate waiver of sovereign immunity as to a state law claim underlying a section 544 action, which state law claim is a necessary component of the claim under section 544, would eviscerate the abrogation of sovereign immunity for section 544 actions. Under the argument presented ... the reference to section 544 in section 106 would be meaningless. Why would Congress explicitly waive sovereign immunity for all other avoidance actions under the Bankruptcy Code, and include a waiver of sovereign immunity for actions under section 544 knowing that section 544 encompasses state law theories, but then require a separate waiver of sovereign immunity for the necessary state law component in actions under section 544? The argument offered by the United States defies logic. Sections 106 and 544, together, lead to the inescapable conclusion that Congress intended to waive sovereign immunity for any action that may be brought under section 544.

*Id.*

In another case, *Menotte v. United States (In re Custom Contractors, LLC),* 439 B.R. 544 (Bankr.S.D.Fla.2010), the court also held that "[t]he abrogation of sovereign immunity under § 106 extends to an action under § 544 derived from state law." *In re Custom Contractors, LLC,* 439 B.R. at 548. Moreover, the court held that "[t]o require a trustee to demonstrate ... [the] waived sovereign immunity in every instance the trustee seeks to rely on state law for the purpose of § 544 would render the general abrogation of sovereign immunity under § 106 almost meaningless." *Id.* at 549. The court found "this interpretation of § 106 untenable" and held that the defendant's sovereign immunity argument failed. *Id.* I find this reasoning persuasive, *see In re Pharmacy Distrib.,* 455 B.R. at 821 (collecting cases), and I reject the Movant States' argument to the contrary. (Doc. # 104, at 13–14.)

One primary argument of the Movant States is that § 544(b)(1) is not a "uniform law on the subject of bankruptcies" because it permits a trustee to invoke substantive rights under one of the fifty states' applicable laws. According to the Movant States, *Katz's* "ineluctable conclusion ... that States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies'" does not apply with respect to § 544(b). (*See* Doc. # 104, at 27.) Rather, the Movant States argue, § 544 fits within footnote 15 of *Katz,* which states that the Supreme Court does "not mean to suggest that every law **labeled** a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge upon state sovereign immunity." *Katz,* 546 U.S. at 378 n. 15, 126 S.Ct. 990 (emphasis added). The Movant States conclude that sovereign immunity was not subordinated as to § 544(b), because it

allows supposedly non-uniform applications via various states' laws.

I do not agree. As discussed above, those who crafted the Bankruptcy Clause would have understood it to give Congress the power to authorize courts to avoid fraudulent transfers and recover the relevant property. Section 544 is a properly labeled law on the subject of bankruptcy, and Congress applied it to the states and other non-state creditors in the same way through § 106. The fact that various state laws are implicated is no ground for constitutional concern. *See Stellwagen v. Clum,* 245 U.S. 605, 613–14, 38 S.Ct. 215, 62 L.Ed. 507 (1918) ("Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the state in certain particulars, although such recognition may lead to different results in different states. For example, the Bankruptcy Act recognizes and enforces the laws of the states affecting dower, exemptions, the validity of mortgages, priorities of payment and the like. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the Act is not alike in all the states.") (citation omitted). Since the constitutionality of a bankruptcy law is not affected by state laws leading to different results in different states—and nor is the propriety, *see Stellwagen,* 245 U.S. at 613, 38 S.Ct. 215—there is no basis for concluding that footnote 15 of *Katz* should somehow apply to § 544(b) as against the states. Moreover, I interpret footnote 15 in *Katz* to merely guard against the nefarious labeling of a law as one on the subject of bankruptcies (by placement in title 11), when it is in fact unrelated to bankruptcy proceedings and improperly attempting to capitalize on the states' surrender of sovereign immunity in the plan of the convention.

The Movant States submitted an unpublished and unreported case, *Dillworth v. Ginn (In re Ginn–La),* Adv. Proc. No. 10–2976–PGH (Bankr.S.D.Fla. Dec. 10, 2010) in support of the Motion. In *Ginn–La,* the court held that § 544(b) was a law that cannot impinge upon state sovereignty. The court cited footnote 15 of *Katz* and held that the states did not waive sovereign immunity rights with respect to the state laws embedded in § 544(b) in the plan of the convention. *Id.* at *11–12. For the reasons stated above, I disagree with that court's conclusion. *Ginn–La* reads too far into the historical recitation of a certain concern articulated by the majority in *Katz,* as well as the proper scope of footnote 15, without considering all of the majority's historical concerns.

I agree with the Bankruptcy Court for the Southern District of Florida's decision, issued approximately three months prior to its decision in *Ginn–La,* in *In re Custom Contractors.* Of particular importance was the court's reliance on and favorable citation of *Liebersohn v. IRS (In re C.F. Foods, L.P.),* 265 B.R. 71 (Bankr. E.D.Pa.2001) and *Brandon Overseas,* No. 09–01971, 2010 WL 2812944 (Bankr. S.D.Fla. July 16, 2010). The cases of *C.F. Foods, Brandon Overseas,* and *Custom Contractors* all recognized the longstanding precedent of Congress to provide a trustee with rights that are greater than those possessed by the unsecured creditor upon whom a § 544 claim is based.

With respect to the Movant States' "uniformity" argument, I also note that as a practical matter these concerns are largely unfounded. With the exception of Virginia, every Movant State involved in this Motion has enacted the **Uniform** Fraudulent Transfer Act ("UFTA") (emphasis added). In fact, UFTA prevails as the uniform law in a vast majority of jurisdic-

tions, including forty-three states,[11] the Virgin Islands, and the District of Columbia. *See Collier on Bankruptcy,* ¶ 548.01[2][a] (16th ed.). Of the remaining non-UFTA states, two follow UFTA's predecessor, the Uniform Fraudulent Conveyance Act ("UFCA"), which was drafted by the same National Conference of Commissioners on Uniform State Laws and shares much in common with UFTA. The five remaining states (including Virginia) have not adopted UFTA or UFCA, but "have generally codified the Statute of Elizabeth, and use common law principles derived from cases interpreting the Statute of Elizabeth in applying their respective statutes." *See Collier on Bankruptcy,* ¶ 548.01[2][a] (16th ed.). For instance, Virginia's statute "is merely declaratory of the common law and, stated simply, provides that a fraudulent conveyance is voidable." *Hyman v. Porter (In re Porter),* 37 B.R. 56, 62–63 (Bankr.E.D.Va.1984). Thus, while almost all of the states (and the District of Columbia and U.S. Virgin Islands) use identical and clearly "uniform" state law on the subject of fraudulent transfer, those states without UFTA or UFCA can trace their laws to the same origin. In fact, UFTA and UFCA both originated as codifications of the "better" common law decisions applying the Statute of 13 Elizabeth. *See* UFTA Prefatory Note, 7A pt. II U.L.A. 268 (1999), *available at* http://www.law.upenn.edu/bll/archives/ulc/fnact99/1980s/ufta84.pdf (last visited Jan. 11, 2011). Thus, I find that the origin, purpose, and many particulars of state fraudulent transfer law are in fact uniform across the states.

### Conclusion

 I conclude that the Movant States' sovereign immunity was abrogated with respect to fraudulent transfer actions brought under § 544(b)(1) and incorporat-

ed State Laws, and that Congress provided the trustee with rights that are greater than those possessed by the unsecured creditor upon whom a § 544(b)(1) claim is based. Therefore, I deny the Movant States' Motion.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the States' motions to dismiss the third through the sixth causes of action in Trustee's Second Amended Complaint (Doc. # # 103, 28) are hereby **denied.**

---

**11.** *See Collier on Bankruptcy,* ¶ 548.01B (16th ed.) for a list of states that enacted UFTA.